## Commonwealth *vs.* Mark Aaron Marshall.

Essex. March 9, 2001. - June 20, 2001.

Present: Marshall, C.J., Greaney, Ireland, Spina, & Cowin, JJ.

*Practice, Criminal,* Required finding, Capital case. *Homicide. Evidence,* Hearsay, Spontaneous utterance, Prior misconduct, Relevancy and materiality.

At the trial of an indictment for murder in the first degree, the judge did not err in denying the defendant's three motions for a required finding of not guilty, where the evidence was more than sufficient to warrant findings that the defendant committed the murder with deliberate premeditation and acted with malice aforethought. [360-363]

The judge at a murder trial properly admitted an out-of-court statement of a witness describing what the victim had told her approximately two hours after a fight with the defendant, where a sufficient indicia of reliability was evidenced by the witness's testimony establishing that the victim had uttered a spontaneous statement while in a highly agitated state, precipitated by a recent traumatic event, before the victim had time to contrive or fabricate the remarks. [363-365]

At the trial of a murder indictment, where any prejudicial effect of certain testimony relating prior bad acts of the defendant did not substantially outweigh its probative value, the judge did not abuse her discretion in admitting, with limiting instructions, such testimony. [365-367]

The judge at a murder trial properly admitted testimony of the victim's son, where there was no basis to conclude that the Commonwealth called the witness improperly, and where the testimony was relevant and its probative value substantially outweighed any prejudicial effect it may have had. [367-369]

Indictment found and returned in the Superior Court Department on June 24, 1998.

The case was tried before *Barbara J. Rouse,* J.

*Willie J. Davis* for the defendant.

*Daniel I. Smulow,* Assistant District Attorney, for the Commonwealth.

Ireland, J. A jury convicted the defendant of murder in the first degree based on a theory of deliberate premeditation. The defendant has appealed from the conviction, claiming that the

judge erred in denying his motions for a required finding of not guilty, and made numerous reversible errors in her evidentiary rulings. He also requests that we exercise our plenary power under G. L. c. 278, § 33E, to reduce the degree of guilt. For the reasons set forth below, we affirm the conviction and decline to exercise our power under G. L. c. 278, § 33E.

1. *Background.* We summarize the facts in the light most favorable to the Commonwealth, reserving certain details for discussion in conjunction with the issues raised. *Commonwealth v. Fisher*, 433 Mass. 340, 341 (2001). For several years, the victim and the defendant had been involved in, according to the defendant, an "up and down" romantic relationship. Although they never married, they lived together. Within the first one and one-half years of the relationship, the victim obtained a protective order, pursuant to G. L. c. 209A, against the defendant because she feared that he would harm her physically. She subsequently let this order expire, and one month later, the couple's son was born.

During the following weeks, the relationship deteriorated. The defendant and the victim argued frequently. She moved out of their home. Approximately one month prior to the murder, the defendant approached one of the victim's friends and informed her that the victim had "better be willing to die for [the baby] because if anything happens to the baby, that's what's going to happen to her." Shortly thereafter, the defendant held a knife to the victim's neck and warned her that "one day something was going to happen to her if things continued the [way they were]." Nine days before she died, the victim, again fearing that the defendant would harm her, obtained a second protective order against him.

On the day of the murder, despite the no-contact order, the defendant paged the victim twice, both times entering the code "911," followed by their former telephone number, effectively summoning her to their former residence. In response, the victim left her apartment with her older son,[1] picked up the baby from the babysitter, and went to the defendant's house with the children. Also present at the scene were the defendant's mother,

---

[1]The defendant is not his father.

sister, niece, and his two other children. The victim and the defendant went upstairs to the bedroom. She was later found by police officers, lying on the floor, dead from a stab wound in her back. She had been stabbed with a force analogous to, according to the medical examiner's testimony, "chopp[ing] through a piece of bone."

The defendant testified to the following. In the bedroom, he asked the victim why she had obtained the protective order. She did not respond and they began to argue. She then approached the defendant with a fireplace poker "down by her side" and struck his head with her fist. The defendant did not sustain any injuries from the blow. He could not account for the presence of the poker in the bedroom of a house that no longer had a fireplace. In response to the victim's actions, he "instinctively" reached to the floor for a kitchen knife. Again, the defendant could not explain why a kitchen knife was on the bedroom floor. After he picked up the knife, they "had a struggle and she fell and [the defendant] fell on top of her" with the knife in his hand, although he could not remember what caused him to fall. He attempted to break his fall with the hand holding the knife, and at this point, he went into what he referred to as "shock."[2] He could not testify to any of the events that followed.[3] He did, however, acknowledge that the victim was stabbed with the knife he had picked up from the floor. His sister supplied a number of additional details, including the fact that after the murder, the defendant would not allow her or her mother to telephone the police for help, that he covered the victim's face with a cloth, and that he concealed the knife in another bedroom. A police officer who investigated the crime scene testified that the victim's body was found covered with trash bags, clothing and other debris. According to the medical examiner, the victim died from the stab wound to her back within five to ten minutes of the attack.

2. *Motions for a required finding of not guilty.* The defendant

[2]The defendant presented no medical evidence at trial that he actually went into shock. At trial, he defined "shock" as being unaware of his surroundings and what had taken place.

[3]Specifically, he did not initially realize that the victim had been stabbed, or that she exhibited any symptoms of the injury, such as blood loss or an inability to breathe.

moved three times for a required finding of not guilty on the charge of murder in the first degree — after the Commonwealth rested, after the close of the evidence, and after the verdict. The judge denied each motion. The defendant now argues that the Commonwealth's evidence was insufficient to establish that the murder was committed with both deliberate premeditation and malice.

A defendant is entitled to a required finding of not guilty only when "the evidence is insufficient as a matter of law to sustain a conviction on the charge." Mass. R. Crim. P. 25 (a), 378 Mass. 896 (1979). See *Commonwealth* v. *Andrews*, 427 Mass. 434, 440 (1998). On appeal, we must determine whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (emphasis in original). *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979), quoting *Jackson* v. *Virginia*, 443 U.S. 307, 318-319 (1979). "The question of guilt must not be left to conjecture or surmise." *Commonwealth* v. *Lodge*, 431 Mass. 461, 465 (2000), quoting *Commonwealth* v. *Anderson*, 396 Mass. 306, 312 (1985). However, in criminal prosecutions, circumstantial evidence is competent to establish guilt beyond a reasonable doubt. *Commonwealth* v. *Dostie*, 425 Mass. 372, 375 (1997). "An inference drawn from circumstantial evidence 'need only be reasonable and possible; it need not be necessary or inescapable.' " *Commonwealth* v. *Lodge, supra,* quoting *Commonwealth* v. *Beckett*, 373 Mass. 329, 341 (1977). Gauged by these standards, the defendant's motions were properly denied.

a. *Deliberate premeditation.* The evidence was more than sufficient to support a finding that the murder was committed by the defendant with deliberate premeditation. The jury heard evidence that "warranted a finding that the defendant's resolve to kill the victim was the product of cool reflection . . . even if formed in a matter of seconds" (citations omitted). *Commonwealth* v. *Andrews*, 427 Mass. 434, 440-441 (1998). See *Commonwealth* v. *Chipman*, 418 Mass. 262, 269 (1994). The Commonwealth's evidence, if believed, showed that the defendant and the victim shared a contentious and deteriorated relationship, the termination of which culminated in the

defendant's executing his plan to kill her. Before she was murdered, the victim feared the defendant would harm her, as evidenced by the protective orders. The defendant had threatened the victim's life both directly and through her friends. On the day of the murder, the defendant wilfully violated the protective order when he lured the victim to the home that they once had shared. When she arrived, he isolated himself with the victim, interrogated her about the order, and then, as mentioned previously, stabbed her to death with great force. He stabbed the victim when she had her back to him, and the jury heard no evidence that she ever screamed. See *Commonwealth* v. *Stirling*, 351 Mass. 68, 75 (1966), and cases cited (proper to consider lack of struggle with respect to deliberately premeditated malice aforethought). These facts were sufficient to allow the jury to conclude, beyond a reasonable doubt, that the defendant, having decided to murder the victim, planned "how to effectuate that desire and . . . evaluat[ed] . . . the 'pros and cons' of proceeding," *Commonwealth* v. *Gibson*, 424 Mass. 242, 247, cert. denied, 521 U.S. 1123 (1997), and thus, killed her with deliberate premeditation. See *Commonwealth* v. *Degro*, 432 Mass. 319, 325 (2000); *Commonwealth* v. *Lodge, supra* at 466.

b. *Malice aforethought.* Equally sufficient was the evidence that the defendant acted with malice aforethought, which in the context of deliberately premeditated murder, means an intent to cause death. Model Jury Instructions on Homicide 8 (1999). *Commonwealth* v. *Jiles*, 428 Mass. 66, 71-72 (1998). *Commonwealth* v. *Waite*, 422 Mass. 792, 804 (1996). Where, after isolating himself with the victim, the defendant used tremendous force to stab the victim with a kitchen knife with an eight-inch blade, which he found inexplicably lying on the bedroom floor, we conclude that a rational jury could, beyond a reasonable doubt, find that the defendant acted with the specific intent to kill the victim, and thus, malice aforethought. See *Commonwealth* v. *Begin*, 394 Mass. 192, 197 (1985) (malice may be inferred from intentional use of deadly weapon); *Commonwealth*

v. *Gilbert*, 413 Mass. 863, 869 (1996). The motions were properly denied.[4]

3. *Spontaneous utterance.* The defendant claims that the judge erred in admitting certain portions of Cynthia Ravizee's testimony. He filed a motion in limine to exclude the testimony as hearsay. After conducting a voir dire of Ravizee, the judge ruled that the testimony was admissible as a spontaneous utterance. Ravizee testified, over the defendant's objection, that two weeks before the murder, just after a fight between the defendant and the victim, the victim told her that during the fight, the defendant held a knife to the victim's neck and informed her that "one day something was going to happen to her if things continued the [way they were]."

Under the spontaneous utterance exception to the hearsay rule, "a statement is admissible if its utterance was spontaneous to a degree which reasonably negated premeditation or possible fabrication and if it tended to qualify, characterize and explain the underlying event." *Commonwealth* v. *Crawford*, 417 Mass. 358, 362 (1994), *S.C.*, 430 Mass. 683 (2000), quoting *Commonwealth* v. *Brown*, 413 Mass. 693, 695-696 (1992). Such statements are admissible because they are made in circumstances rendering them "particularly trustworthy." *Commonwealth* v. *Grant*, 418 Mass. 76, 81 (1994). "[T]he statements 'need not be strictly contemporaneous with the exciting cause.' " *Commonwealth* v. *Brown, supra*, quoting *Rocco* v. *Boston-Leader, Inc.*, 340 Mass. 195, 197 (1960). In determining whether to admit such evidence, "the trial judge 'ought to be

---

[4]For the same reasons, the defendant's claim that the denials of his motions for a required finding of not guilty violated his due process rights under the Fourteenth Amendment to the United States Constitution is without merit. See *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979).

In addition to challenging the judge's denial of the motion for the required finding of not guilty, the defendant also contends that the judged abused her discretion in denying the defendant's motion for a new trial or to reduce the verdict pursuant to Mass. R. Crim. P. 25 (b) (2), 378 Mass. 896 (1979). For the same reasons that we refuse to grant § 33E relief, see *Commonwealth* v. *Woodward*, 427 Mass. 659, 667 (1998) ("The judge's power under rule 25[b][2], like our power under G. L. c. 278, § 33E, may be used to ameliorate injustice caused by the Commonwealth, defense counsel, the jury, [or] the judge's own error"), we conclude the judge was well within her discretion in denying the defendant's motion. See *Commonwealth* v. *Maillet*, 400 Mass. 572, 579 (1987); *Commonwealth* v. *Keough*, 385 Mass. 314, 321 (1982).

given broad discretion . . . . [A]nd only in clear cases . . . of an improper exercise of discretion should [her] ruling be revised.' " *Commonwealth* v. *Brown, supra* at 696, quoting *Commonwealth* v. *McLaughlin*, 364 Mass. 211, 223 (1973).

The question whether the judge properly admitted the victim's statement turns on whether, during the time that elapsed between the time of the incident and the time at which she made the statement, the victim was capable of "reflecting sufficiently on the incident to contrive a false story." *Commonwealth* v. *Grant, supra* at 81. We conclude that she was not. The evidence presented at a voir dire hearing warranted the conclusion that the victim made the statements to Ravizee while she was still under the influence of the exciting event, see *Commonwealth* v. *Nunes*, 430 Mass. 1, 4 (1999) ("The statement itself may be taken as proof of the exciting event"); *Commonwealth* v. *Snell*, 428 Mass. 766, 777-778, cert. denied, 527 U.S. 1010 (1999), "and in a context where she would be expected to be truthful." *Commonwealth* v. *Brown, supra* at 696. Cf. *Commonwealth* v. *McLaughlin*, 433 Mass. 558, 565 (2001) (statement not admitted as spontaneous utterance where defendant stood to gain by giving "his version" of altercation in statement to police and had strong motive to fabricate). The victim arrived at Ravizee's home to drop off the baby after the defendant had held a knife to her throat and threatened her life. She was visibly "upset," "crying," and "nervous," as a result of the incident. In response, Ravizee tried to calm her down by offering her a soda and giving her tissues. The victim told Ravizee that she needed to speak with her. After Ravizee asked her daughter to leave the room and left her alone for a few minutes, the victim, still "very upset," "crying and nervous," and "in fear," recounted what had taken place between herself and the defendant. Although the judge could have found that approximately two hours had passed since the altercation transpired, "[p]recise contemporaneousness is not required so long as it appears that, notwithstanding the passage of some time, the statements were made under the stress of the exciting event, a circumstance which is present here." *Commonwealth* v. *Brown, supra* at 696. Indeed, "there can be no definite and fixed limit of time. Each case must depend upon its own circumstances." *Rocco* v.

*Boston-Leader, Inc., supra* at 197, quoting J. Wigmore, Evidence § 1747 (3d ed. 1940).

The defendant argues that "the totality of the circumstances suggest deliberation, not spontaneity." When she arrived at Ravizee's approximately two hours after the event, she dressed the baby, and waited for Ravizee to listen to her story. Thus, the defendant insists, when she finally made the statement, it was not spontaneous. We are unpersuaded by this argument. Ravizee's testimony established that the victim uttered the spontaneous statement while in a highly agitated state, precipitated by a recent traumatic event, before the victim "had time to contrive or fabricate the remark, and thus it has sufficient indicia of reliability." *Commonwealth* v. *Zagranski*, 408 Mass. 278, 285 (1990). Our conclusion is not altered by the fact that the victim had already planned to go to Ravizee's to drop off the baby for daycare, and thus, did not go for the sole purpose of making the statement. The judge was within her broad discretion in admitting the testimony.

4. *Evidence of prior bad acts.* The defendant argues that the judge erred in admitting Ravizee's statement, discussed above, as well as Cheryl Kemp's testimony that about three weeks prior to the killing, the defendant informed Kemp that the victim had "better be willing to die for [their baby], because if anything happens to the baby, that's what's going to happen to her," as "prior bad acts" evidence. Although he objected to these statements at trial on hearsay grounds, he did not specifically challenge their admission as prior bad acts. See P.J. Liacos, Massachusetts Evidence § 3.8.3., at 85 (7th ed. 1999) ("When objecting, counsel should state the specific ground of the objection unless it is apparent from the context").

In particular, the defendant claims that such evidence was more prejudicial than probative. As previously discussed, Ravizee's testimony was properly admitted as a spontaneous utterance. Kemp's statement was admissible, if for no other reason, as an admission of a party opponent. See P.J. Liacos, Massachusetts Evidence, *supra* at § 8.8.1, at 496 ("Any extra-judicial statement by a party may be admitted in evidence against that party by an opponent, and will not be excluded on the ground it constitutes hearsay"); *Commonwealth* v. *Lewin*

*(No. 2)*, 407 Mass. 629, 631 (1990), quoting *Commonwealth* v. *Bonomi*, 335 Mass. 327, 347 (1957) ("An admission in a criminal case is a statement by the accused, direct or implied, of facts pertinent to the issue, which although insufficient in itself to warrant a conviction tends in connection with proof of other facts to establish his guilt"). However, even if the statements are admissible as nonhearsay or under a hearsay exception, "[i]t is well settled that the prosecution may not introduce evidence that a defendant previously has misbehaved, indictably or not, for the purposes of showing his bad character or propensity to commit the crime charged." *Commonwealth* v. *Helfant*, 398 Mass. 214, 224 (1986). On the other hand, we have held that evidence relevant to issues other than bad character or criminal propensity, such as "to show a common scheme, pattern of operation, absence of accident or mistake, identity, intent or motive," *id.*, may be admitted if its probative value is not substantially outweighed by its unfair prejudice. *Commonwealth* v. *Rodriguez*, 425 Mass. 361, 370 (1997). *Commonwealth* v. *Fordham*, 417 Mass. 10, 22 (1994).

Here, the testimony of both witnesses was directly relevant to the defendant's intent or motive to kill the victim. See *Commonwealth* v. *Squailia*, 429 Mass. 101, 105 (1999) (evidence of defendant's threats relevant to show intent or state of mind); *Commonwealth* v. *Snell*, 428 Mass. 766, 777, cert. denied, 527 U.S. 1010 (1999), quoting *Commonwealth* v. *Cormier*, 427 Mass. 446, 450 (1998) ("Evidence of a hostile relationship between a defendant and his spouse may . . . be admitted as relevant to the defendant's motive to kill the victim spouse"); *Commonwealth* v. *Rodriguez*, 425 Mass. 361, 371 (1997). Thus, we turn to whether admitting the evidence unduly prejudiced the defendant.

The determination whether the prejudicial effect of this evidence outweighed its probative value is well within the sound discretion of the judge, *Commonwealth* v. *Snell*, *supra*, and one that we shall not disturb "unless, in our judgment, it is palpably wrong." *Commonwealth* v. *Fordham*, *supra* at 22. See *Commonwealth* v. *Gunter*, 427 Mass. 259, 262-263 (1998). There was no such error in this case. Both of the hostile and threatening statements "depict[ed] the existence of a hostile relationship

between the defendant and the victim," *Commonwealth* v. *Snell, supra,* and thus, were probative of the defendant's motive and intent to kill the victim. See *Commonwealth* v. *Maldonado,* 429 Mass. 502, 504 (1999); *Commonwealth* v. *DiMonte,* 427 Mass. 233, 243 (1998) ("Evidence of a hostile relationship between spouses is probative of a defendant's motive in an act of violence against his spouse").[5]

Although the defendant did not request a limiting instruction at the time the evidence was admitted, the judge, in her charge to the jury, gave a clear and explicit instruction on the limited use of prior bad acts evidence. *Commonwealth* v. *Ferguson,* 365 Mass. 1, 11 (1974) (timing of limiting instruction within judge's discretion). *Commonwealth* v. *Chartier,* 43 Mass. App. Ct. 758, 761 (1997). See *Commonwealth* v. *Maldonado, supra* at 505 & n.1. She told the jury that if they believed Ravizee's and Kemp's prior bad acts testimony, they were only to consider it with respect to the defendant's intent, motive, or common scheme or plan, and that they could not "substitute" prior bad acts testimony "for proof the defendant committed the crime charged." On balance, any prejudicial effect did not substantially outweigh the probative value, and therefore, the judge did not abuse her discretion in admitting the statements.[6]

5. *Testimony of the victim's son.* In the context of his request for relief under G. L. c. 278, § 33E, the defendant argues that the prosecutor called the victim's son in a "calculated" attempt "designed" to generate sympathy improperly. He further claims that, even if the evidence presented by such testimony was relevant, its probative value was substantially outweighed by its prejudicial effect. The defendant had filed a pretrial motion in limine to exclude the testimony, and then renewed his objection to the testimony's admission after a voir dire of the witness. Consequently, although he essentially argues that the admission of this testimony amounted to a substantial likelihood of a

---

[5]Unlike some of these cases, the victim and the defendant were not married. Given the facts, this is a distinction without a difference.

[6]In addition, the defendant asserts that the statements were more prejudicial than probative because they were "conditional," and because there was no evidence of malice or deliberate premeditation other than these threats. Given the other evidence of malice and deliberate premeditation discussed *supra,* we see no merit to this contention.

miscarriage of justice, he is actually entitled to the more deferential nonprejudicial error standard, under which we shall review his claim. See *Commonwealth* v. *Vinnie*, 428 Mass. 161, 163, cert. denied, 525 U.S. 1007 (1998).

We conclude that the evidence was properly admitted. Initially, we note that no evidence of "calculated impropriety" on the part of the prosecution in calling the victim's son to testify has been shown. "There is no basis to conclude that the Commonwealth called the witness improperly." *Commonwealth* v. *Andrews*, 430 Mass. 441, 451 (1988).

Moreover, in murder cases, "there is no error where a member of the victim's family likely to elicit sympathy testifies as to some relevant issue, even a relatively peripheral one and even where another witness could have given the same information without evoking the same level of sympathy from the jury." *Commonwealth* v. *Santiago*, 425 Mass. 491, 496-497 (1997), *S.C.*, 427 Mass. 298, and 428 Mass. 39, cert. denied, 525 U.S. 1003 (1998). Contrary to the defendant's assertion, the evidence was relevant and its probative value substantially outweighed any prejudicial effect it may have had. Only the son could testify about the events preceding his mother's encounter with the defendant at their former home. Specifically, he identified his mother's pager and testified that it went off, prompting her to prepare to meet the defendant. He also testified that his mother and the defendant often verbally argued during the course of their relationship. Additionally, the Commonwealth properly elicited "family background information," such as the victim's occupation and birthplace, in order to "tell the jury something of the person whose life [has] been lost in order to humanize the proceedings." *Commonwealth* v. *Degro*, 432 Mass. 319, 323 (2000), quoting *Commonwealth* v. *Santiago*, *supra* at 497. Accordingly, his testimony was relevant to and, probative of, the events leading up to the victim's demise, as well as the contentious relationship that precipitated her death. Cf. *Commonwealth* v. *Santiago*, *supra* at 496-497 (where victim's sister offered no relevant testimony; prosecutor made excessive pleas to sympathy in arguments; sister testified to victim's life and sister's own experience concerning victim's death; and sister yelled, "Murderer. You killed my sister," at defendant as she left witness stand; such testimony improper).

Moreover, the fact that some of the boy's testimony actually aided the defendant's case — such as the fact that the defendant fought only verbally, and not physically with the victim — as well as the fact that the prosecutor made only one fleeting reference to the witness during her closing argument, helped to reduce any alleged prejudice caused by the testimony. As such, the judge committed no "palpable error" in admitting the boy's testimony. *Commonwealth* v. *McIntyre,* 430 Mass. 529, 539 (1999).

6. *Section 33E review.* Having reviewed the record as a whole, we discern no reasons to exercise our authority under G. L. c. 278, § 33E, to order a new trial or reduce the degree of guilt.

*Judgment affirmed.*