COMMONWEALTH vs. CHRISTOPHER MCGRATH.

No. 02-P-1049.

Barnstable. October 1, 2003. - March 24, 2004.

Present: MASON, BROWN, & BERRY, JJ.

*Homicide. Motor Vehicle,* Homicide, Operation. *Negligence,* Motor vehicle. *Practice, Criminal,* Instructions to jury, Required finding, Witness, Argument by prosecutor, Assistance of counsel.

At the trial of a criminal complaint charging the defendant with vehicular homicide, the judge's instructions to the jury were adequate to inform them that they were required to find beyond a reasonable doubt both that the defendant was negligent and that his negligence caused the victim's death. [689-691]

The evidence at the trial of a criminal complaint charging the defendant with vehicular homicide was sufficient to warrant a finding by the jury that the defendant had operated his truck negligently, and therefore, the judge properly denied the defendant's motion for a required finding of not guilty. [691-692]

At the trial of a criminal complaint charging the defendant with vehicular homicide, the judge did not err in allowing the victim's husband to testify, even though his testimony was likely to elicit sympathy, where the husband testified to the victim's regular habit, which was arguably relevant to show both the victim's likely location at the time of the accident and her direction of travel at that time [692]; moreover, although the judge would have been well advised to give the curative instruction that defense counsel requested when, following the conclusion of the husband's testimony, the husband approached defense counsel and requested that the judge direct counsel to refer to the victim in a specific manner, no material prejudice to the defendant arose from the judge's decision not to give such an instruction, where the judge gave general instructions to the jury that they should base their verdict solely on the evidence presented and not be swayed by any bias or sympathy toward either side, and where the incident was isolated, nontestimonial, and directed at defense counsel rather than the defendant [693].

At a criminal trial, the prosecutor in his closing argument did not misstate the Commonwealth's burden of proof or misstate the evidence. [693]

A criminal defendant's counsel was not ineffective for failing to object on voluntariness grounds to statements that the defendant made to police officers immediately after the incident at issue, where there was nothing in the transcript to suggest that the defendant, at the time he made these statements, was under the influence of drugs or alcohol or otherwise suffering

from any condition or disability that might have rendered his statements involuntary. [694]

COMPLAINT received and sworn to in the Orleans Division of the District Court Department on October 9, 2001.

The case was tried before *Lance J. Garth*, J.

*George Hassett* for the defendant.

*Julia K. Holler*, Assistant District Attorney, for the Commonwealth.

MASON, J. On July 30, 2001, at about 6:15 A.M., the victim, Maureen Kane, was struck and killed by the tailgate of a truck as she was walking south on Route 134 in Dennis. A criminal complaint issued against the driver of the truck, the defendant Christopher McGrath, charging him with vehicular homicide, G. L. c. 90, § 24G, and also charging him with operating a motor vehicle negligently so that the lives or safety of the public might be endangered, G. L. c. 90, § 24. Following a jury trial, the defendant was found guilty of the charge of vehicular homicide, but the jury found him not guilty of the charge of operating a motor vehicle negligently.[1]

On appeal, the defendant claims that the judge committed several errors of law, including his instructions to the jury on the elements of vehicular homicide; the denial of the defendant's motion for a required finding of not guilty made at the close of the Commonwealth's case; permitting the Commonwealth to call the victim's husband as a witness; and failing to give a curative instruction with respect to certain statements that the husband made following his testimony. In addition, the defendant argues that the prosecutor misstated the Commonwealth's burden of proof and misstated the evidence during his closing argument. The defendant claims that he was denied the effective assistance of counsel because of his counsel's failure to file a motion to suppress certain statements of the defendant made immediately following the accident, and

---

[1] It is well settled that inconsistent verdicts in criminal cases are not a matter for judicial inquiry unless they are impossible as a matter of law. *Commonwealth* v. *Graves*, 35 Mass. App. Ct. 76, 88 (1993). The defendant makes no such claim in this case.

because of his counsel's failure to object to the alleged prosecutorial misconduct. Finally, the defendant claims that these instances of judicial error, prosecutorial misconduct, and ineffective assistance of counsel were cumulatively sufficient to warrant a setting aside of the verdict against him, even if they did not individually warrant any such relief. We affirm the judgment.

*Background.* We recite the facts as the jury could have found them. Route 134 in Dennis has one northbound lane and one southbound lane divided by a double yellow line. The posted speed limit was forty-five miles an hour. On the morning of July 30, 2001, the road was dry and the weather was clear.

At about 6:15 A.M., Laurie Barr, who was delivering newspapers with a male companion, Frank Bruyere, Jr., turned into the southbound lane of Route 134 from Hokum Rock Road. After making the turn, Barr observed the defendant's large Mitsubishi stake bed[2] truck also traveling south about two car lengths ahead of her. She observed a woman walking down the side of the road ahead of the truck to the right of a white fog line that had been painted on the side of the road. Barr was driving her car at about thirty-five miles an hour and the truck appeared to be proceeding at approximately the same speed. There were no other vehicles on the road at the time.

Almost immediately after Barr had made the foregoing observations, she saw what she believed was the tailgate on the passenger side of the defendant's truck hit the woman and send her flying into the brush on the side of the road. The truck had not swerved or made any other sudden movement before the impact. The truck immediately pulled over to the side of the road while Barr pulled her own car over to the other side of the road. Barr then saw the defendant, whom she recognized as a person she had known from school, get out of the truck with a cell phone in his hand. Barr asked the defendant if he had called the police but he did not respond. Barr then called the police herself while Bruyere ran over to try to help the victim.

---

[2]A stake bed truck contains "posts fitted into sockets at the edge of . . . a truck bed . . . to help hold a load." Webster's New World Dictionary 938 (1983). The tailgate of the truck here opened from the center of the gate and swung on hinges on the driver's side and passenger's side of the truck.

A short time later, Officer Nicholas Patsavos of the Dennis police department arrived at the scene and, together with the defendant and Bruyere, attempted to render aid to the victim pending the arrival of emergency medical personnel. An off-duty firefighter, Michael Petrick, also arrived at the scene and assisted with these efforts. No one was able to start the victim breathing or obtain a pulse from her.

At some point, the defendant began to walk away from the victim back towards his truck. Officer Patsavos went with him. At this time, the defendant stated to Officer Patsavos, "I can't believe this happened," and "I'll be honest, there was a bee in the truck." He further stated that, as he was swatting at the bee, he heard a bang and, thinking that he had either hit something or something had fallen off his truck, he had pulled the truck over to the side of the road. The defendant then told Officer Patsavos that he had a minor heart condition and was having trouble breathing, so Officer Patsavos stayed with the defendant until rescue personnel arrived.

About ten minutes later, Officer Kathleen Keating of the Dennis police department spoke to the defendant and asked him what had happened. The defendant stated to Officer Keating that, as he was traveling south on Route 134, he had seen a pedestrian to his right just after he had tried to "shoo" a black wasp from the cab of his truck, and that he had swerved trying to avoid the pedestrian but had heard a bang causing him to pull over. The defendant told Officer Keating that, at the time the accident occurred, the tailgates to his truck were open and secured to the sides of the truck with bungee cords, and he believed that it might have been the tailgate on the passenger side that had struck the pedestrian. The defendant also stated that that tailgate had previously been damaged and was bent.

Officer Patsavos had the defendant's truck towed back to the police station where he conducted an examination of the truck. During this examination, Officer Patsavos noted that the tailgate on the driver's side of the truck was open and secured to that side of the truck with a bungee cord, but that the tailgate on the passenger side of the truck, which was also open, was not secured to that side of the truck. He also noted that there was a red substance and what appeared to be hair on one of the horizontal rails of the tailgate.

At trial, Barr, Bruyere, Petrick, and Officers Patsavos and Keating testified to the foregoing events. The Commonwealth also called as witnesses Michael Kane, the victim's husband, and Craig Cornwall, an emergency room physician at Cape Cod Hospital who observed the victim after she was brought to the hospital following the accident. Kane described the route his wife had generally taken while walking along Route 134, while Dr. Cornwall described the various observations he had made of the victim after she had been brought to the hospital.

In addition, Bernard Wunderlich, a detective with the Dennis police department, and Sergeant Donald Place, an accident reconstruction expert with the State police, testified for the Commonwealth. Both Detective Wunderlich and Sergeant Place testified that they had inspected the defendant's truck after it had been towed to the police station and had found, like Officer Patsavos, that the tailgate on the driver's side of the truck was open and secured to that side of the truck with a bungee cord, while the tailgate on the passenger side of the truck was open but was unsecured to that side of the truck. Sergeant Place testified, however, that he had observed a bungee cord attached to the passenger side of the truck but hanging loosely from the truck.

Sergeant Place testified that the tailgate on the driver's side of the truck, although secured with a bungee cord, still protruded "six or seven inches" beyond the side view mirror attached to the cab of the truck. The mirror itself protruded approximately two and one-half inches beyond the bed of the truck.

Sergeant Place examined the scene of the accident and found that the roadway where the accident occurred was straight and had a visibility of at least 2,000 feet looking north from the site of the accident. There were no obstructions that would hamper a person's ability to see the road as he or she approached that spot.

The defendant did not present any evidence at trial. His primary defense at trial was that he had not been negligent in driving his truck, and his trial strategy was to emphasize alleged deficiencies in the Commonwealth's proof of such negligence.

1. *Alleged erroneous instructions.* The defendant claims that

the judge erred when he failed to instruct the jury that to find the defendant guilty of vehicular homicide they must find that his negligent actions caused the accident, not just that his actions caused the accident. More specifically, the defendant claims that, in instructing the jury on the causation element of the crime, the judge instructed the jury that they must find only that the defendant's actions caused the victim's death, and inadvertently omitted that they must find that the defendant's negligent actions caused the victim's death.

In fact, the judge first instructed the jury that, in order to prove the defendant guilty of the offense of vehicular homicide, the Commonwealth was required to prove beyond a reasonable doubt both that "the defendant operated the vehicle in a negligent manner so that the lives and safety of the public might be endangered" and that "the defendant's actions caused the death of another." Then, after instructing the jury on the elements of the additional charge of operating a motor vehicle negligently, and defining the term "negligent," the judge instructed the jury that the same definition of negligence would apply to the first charge against the defendant, i.e., that of operating a vehicle negligently and, as a result of such operation, causing the death of another. More specifically, the judge instructed the jury:

> "The issue is whether [the defendant] drove as a reasonable person would have under the circumstances, and that description of negligence [is] also to be considered, Madam Forelady and ladies and gentlemen, when you consider Count 1, which is the charge that [the] defendant operated a motor vehicle on a public way, . . . did operate negligently and as a result of his operation, he caused the death of another."

Subsequently, in response to a request by the defendant, the judge further instructed the jury:

> "The fact that an accident occurred is not in itself evidence that the defendant was negligent. You must examine all the evidence about how the accident occurred in order to determine whether [the] defendant was at fault and whether or not [the] defendant's actions rose to the level of negligence."

These instructions were adequate to inform the jury that they must find beyond a reasonable doubt both that the defendant was negligent and that his negligence caused the victim's death. They could not reasonably be understood as permitting the jury to find the defendant guilty of homicide by a vehicle merely because his actions caused the death of the victim, regardless whether those actions were negligent.

2. *Sufficiency of the evidence.* The defendant claims that the judge erred in denying his motion for a required finding of not guilty made at the close of the Commonwealth's case because the evidence was insufficient to warrant a finding by the jury that he had operated his truck negligently. We disagree. The Commonwealth presented evidence that, at the time the accident occurred, the defendant was not being attentive to the road and, as a result, had failed to see the victim walking on the side of the road in time to avoid hitting her with the truck's tailgate, which he knew was protruding from the side of the truck. More specifically, the Commonwealth presented evidence that the road where the accident occurred was straight for an extended stretch of at least 2,000 feet, that there was clear visibility without obstructions, and that, notwithstanding this clear visibility, the defendant had failed to take any action to avoid hitting the victim with the tailgate on the passenger side of his truck as she was walking along the side of the road to the right of the white fog line.[3]

Although the defendant attempted to excuse this failure by referring first to a bee and then to a wasp, the jury were not required to accept this explanation. They could instead infer from all the evidence presented that the defendant, without justification or excuse, had not been attentive to the road in front of him during the crucial period when his truck was approaching the victim with its tailgate protruding beyond the side of the truck and, hence, had failed to "exercise that degree of care, diligence and safety that an ordinarily prudent person

---

[3]As noted above, while the defendant stated to Officer Keating that he had swerved his truck to the left immediately before hitting the pedestrian, Barr testified that she had not observed any such swerve but, rather, that the defendant's truck was proceeding straight ahead when it hit the victim. The jury could credit Barr's testimony.

would exercise under similar circumstances." *Commonwealth* v. *Kline*, 19 Mass. App. Ct. 715, 720 (1985), quoting from *Goldstein* v. *Gontarz*, 364 Mass. 800, 805 (1974). See *Commonwealth* v. *Campbell*, 394 Mass. 77, 83 (1985) (jury could infer negligence from evidence that the defendant did not see one of the victims until the victim was three to five feet in front of his automobile, and never saw the other victim, who was dressed in white and light-colored clothing).

The defendant's reliance on *Aucella* v. *Commonwealth*, 406 Mass. 415 (1990), is misplaced. In that case, there was no evidence that the driver of a car that struck pedestrians as they were crossing an unlighted road at night should have seen the pedestrians before the accident occurred. See *id.* at 418-420. Here, by contrast, there was evidence that the defendant had a clear view of the road ahead of him but still failed to take any action to avoid hitting the victim with the tailgate of his truck as she was walking down the side of the road to the right of the white fog line. In these circumstances, the jury could properly conclude, beyond a reasonable doubt, both that the defendant was negligent and that his negligence had caused the victim's death.

3. *Testimony of the victim's husband.* It is well settled that, in homicide cases such as the present one, "there is no error where a member of the victim's family likely to elicit sympathy testifies as to some relevant issue, even a relatively peripheral one and even where another witness could have given the same information without evoking the same level of sympathy from the jury." *Commonwealth* v. *Marshall*, 434 Mass. 358, 368 (2001), quoting from *Commonwealth* v. *Santiago*, 425 Mass. 491, 496-497 (1997), *S.C.*, 427 Mass. 298 and 428 Mass. 39, cert. denied, 525 U.S. 1003 (1998). In the present case, the victim's husband testified to her regular habit of walking from the house they had recently purchased in the area, out to Route 134, and then down along the side of the road to another road leading from Route 134. This evidence was arguably relevant to show both the victim's likely location and also her direction of travel at the time the accident occurred. The judge, therefore, could properly allow this testimony. See *Commonwealth* v. *Marshall, supra* at 368.

The defendant nevertheless claims that the judge should have given a specific curative instruction when, following the conclusion of his testimony, the husband approached defense counsel and requested that the judge direct counsel to refer to the victim as "Mrs. Kane." The judge specifically found, however, that this incident was "isolated" and "nontestimonial," and that it was directed at defense counsel, rather than at the defendant. Moreover, the judge gave general instructions to the jury that they should base their verdict solely on the evidence presented and not be swayed by any bias or sympathy toward either side. In view of these circumstances, although the judge would have been well advised to give the specific curative instruction suggested by the defendant, we can discern no material prejudice to the defendant from the judge's failure to give such a specific curative instruction.

4. *Improper closing argument.* The defendant claims that the prosecutor misstated the Commonwealth's burden of proof during his closing argument. In fact, the prosecutor said only that: "The Commonwealth doesn't bear the burden of proving each and every fact beyond a reasonable doubt. We only have to prove sufficient facts beyond a reasonable doubt to establish all the elements of the crime." This was a correct statement of the law. See *Commonwealth* v. *Toon,* 55 Mass. App. Ct. 642, 655 n.18 (2002). In any event, the judge forcefully and correctly instructed the jury that they must follow the law as the judge gave it to them, and not as counsel or anyone else gave it to them, and that the Commonwealth bore the burden of proving beyond a reasonable doubt each and every element of the crimes with which the defendant was charged. There was no error.

The defendant also claims that the prosecutor misstated the evidence by asserting that the defendant was talking on his cell phone at the time the accident occurred. In fact, the prosecutor stated only that there was evidence that the defendant had had a cell phone in his hand immediately after the accident and then suggested that the jury might infer from this evidence that the defendant might have been using his cell phone at the time the accident occurred. This was permissible argument. See *Commonwealth* v. *Miles,* 46 Mass. App. Ct. 216, 219-220 (1999), and cases cited.

5. *Ineffective assistance of counsel.* The defendant claims that his counsel was ineffective in failing to object on voluntariness grounds to the statements that the defendant made to police officers immediately after the accident occurred. It does not appear from the trial transcript, however, that, at the time he made these statements, the defendant was under the influence of drugs or alcohol, or otherwise suffering from any condition or disability which might have rendered his statements involuntary. See *Commonwealth* v. *Scott*, 430 Mass. 351, 355 (1999) (listing the factors to be considered in determining whether a statement was voluntary). See also *Commonwealth* v. *Sneed*, 440 Mass. 216, 222 (2003) (defendant's statements during an interview by police in her home were not involuntary merely because, at the time of the interview, the defendant was seventy years old and asthmatic and required a nebulizer to assist her breathing). In these circumstances, where the basis for a claim of ineffective assistance of counsel does not appear "indisputably on the trial record," we may reject the defendant's claim that his counsel was ineffective in failing to object to the admission of the statements. *Commonwealth* v. *Fletcher*, 52 Mass. App. Ct. 166, 171 (2001). See *Commonwealth* v. *Adamides*, 37 Mass. App. Ct. 339, 344 (1994).

We have considered each of the defendant's other claims of ineffective assistance of counsel and conclude, largely for the reasons we have previously explained, that, in each instance, counsel's performance did not fall measurably below that established by the *Saferian* test of ineffective assistance of counsel. See *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). We, therefore, reject the defendant's claim of ineffective assistance of counsel.

6. *Cumulative error.* As we have concluded that there were no instances of judicial error, prosecutorial misconduct, or ineffective assistance of counsel, it follows that the defendant's claim that the cumulative effect of these errors warranted setting aside the verdict likewise fails.

*Judgment affirmed.*