NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-1203

COMMONWEALTH

vs.

CHRISTOS J. ZEVOS.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a jury trial, the defendant was convicted of the motor vehicle homicide of Charlene Lewis by negligent operation. On appeal, he claims there was insufficient evidence to establish that his operation of his car was negligent, and that a claimed misstatement of the law in the prosecutor's closing argument created a substantial risk of a miscarriage of justice. We affirm.

1. Sufficiency of the evidence. The defendant claims that the evidence was insufficient to support his conviction where the Commonwealth's theory of the case, i.e., that the crash was avoidable, and for that reason, the defendant was negligent, was erroneous. We disagree.

> "When analyzing whether the record evidence is sufficient to support a conviction, an appellate court is not required to 'ask itself whether it believes that the evidence at the

> trial established guilt beyond a reasonable doubt.'
> Commonwealth v. Hartnett, 72 Mass. App. Ct. 467, 475
> (2008), quoting . . . Commonwealth v. Velasquez, 48 Mass.
> App. Ct. 147, 152 (1999). . . . Rather, the relevant
> 'question is whether, after viewing the evidence in the
> light most favorable to the prosecution, any rational trier
> of fact could have found the essential elements of the
> crime beyond a reasonable doubt.' Commonwealth v.
> Latimore, 378 Mass. 671, 677 (1979), quoting . . . Jackson
> v. Virginia, 443 U.S. 307, 319 (1979)."

Commonwealth v. Rocheteau, 74 Mass. App. Ct. 17, 19 (2009).

When evaluating sufficiency, the evidence must be reviewed
not based on the theory of the case urged by the prosecution,
but rather with specific reference to the substantive elements
of the offense. See Jackson, 443 U.S. at 324 n.16; Latimore,
378 Mass. at 677-678. The substantive elements of motor vehicle
homicide by negligent operation are: "(1) operation of a motor
vehicle, (2) upon a public way, (3) recklessly or negligently so
as to endanger human life or safety, (4) thereby causing the
death of a person." Commonwealth v. Geisler, 14 Mass. App. Ct.
268, 276 (1982), quoting Commonwealth v. Burke, 6 Mass. App. Ct.
697, 699 (1978). See G. L. c. 90, § 24G (c).[1] Ordinary
negligence is enough to establish motor vehicle homicide,
Commonwealth v. Guaman, 90 Mass. App. Ct. 36, 46 (2016), and
"[t]he appropriate standard of causation to be applied in a
negligent vehicular homicide case under § 24G is that employed

---

[1] The judge properly instructed on the elements of the offense
and the defendant does not claim otherwise.

2

in tort law."  Commonwealth v. Angelo Todesca Corp., 446 Mass. 128, 141 (2006), quoting Commonwealth v. Berggren, 398 Mass. 338, 340 (1986).  The defendant's sufficiency claim on appeal only challenges the third element cited above.

In the light most favorable to the Commonwealth, the jury were entitled to find the following.  In the early morning hours of September 22, 2019, the victim, who was a pedestrian in a marked crosswalk, was struck by a car operated by the defendant.[2] The victim was propelled into the air and came to rest forty-three feet from the place of impact.  There were no adverse weather conditions at the time.  The area of crosswalk and the roadway were well-lit by streetlights, and there was additional ambient light generated from nearby businesses.  The crosswalk was also appointed with yellow reflective crosswalk signs on both sides of the road.  The reflective nature of the signs made them more visible at night.  In the middle of the crosswalk and in the center of the road, there were also reflective, spring-loaded signs cautioning motorists to yield to pedestrians.  In addition, the victim was wearing a gray shirt with silver glitter on it.

The State police did a reconstruction of the crash scene. The posted speed limit on that road was twenty-five miles per

_____

[2] The victim later died from the blunt force trauma caused by being struck by the defendant's car.

3

hour (mph).[3]  Utilizing one method of calculating, the reconstructionist (sergeant) determined that the defendant's car was traveling as fast as twenty-nine mph; alternatively, from his analysis of video footage, the sergeant calculated that the car was traveling as fast as thirty-one mph.  In addition, one civilian witness said the defendant's car "was going fast.  Very fast."  Another civilian witness approximated the defendant's speed to be between thirty-five to forty mph.  The sergeant also determined, based on available video and mathematical calculations, that the victim was in the crosswalk for between six and one-half to seven seconds, and would have been visible to a driver in the defendant's position from 250 feet away.

The defendant did not apply his brakes until after he struck the victim.  He later remarked he "didn't see her in time" and "couldn't break in time."  A car traveling between the twenty-five mph speed limit and the rate of thirty-one mph calculated as part of the State police reconstruction, would require between 104 and 138 feet to stop before colliding with the victim.  In the end, it was the sergeant's opinion that the

---

[3] The defendant claims that because the State police used a sports utility vehicle instead of a sedan -- which the defendant drove -- to do the reconstruction, the results were invalid or insufficient.  However, this claim relates to the weight of the evidence, not its sufficiency.  "[I]t is for the jury alone to determine what weight will be accorded to the evidence." Commonwealth v. Hoffer, 375 Mass. 369, 377 (1978).

defendant "should have been able to perceive, identify, and react to the [victim]. The [defendant] had the time and distance to bring the vehicle to a stop and to avoid the [victim] and avoid the collision."

From this evidence, and the reasonable inferences therefrom, the jury could rationally have concluded that the defendant failed to exercise ordinary care when he drove as much as fifteen mph above the speed limit.[4] He failed to timely perceive, identify, and react to the visually illuminated victim, in a cautioned marked crosswalk discernable on the roadway and by two types of signage, from a distance that would have provided a non-negligent driver ample opportunity to avoid a collision with the victim. Given the well-lit nature of the

---

[4] Based on the testimony of one police officer, and contrary to our standard of review, the defendant claims that there was no evidence that he had been speeding at the time of the accident. However, this claim ignores the evidence from the accident reconstruction, which calculated the defendant's speed to be as much as six mph over the speed limit, and that of the lay witness who approximated his speed to be as much as fifteen mph over the speed limit. To indulge the defendant's claim, "we would have to view the evidence in the light least favorable to the Commonwealth, which, of course, we cannot do." Commonwealth v. Arias, 78 Mass. App. Ct. 429, 435 (2010). The defendant also claims that the testimony of one of the civilian witnesses "was so lacking in credibility that no rational juror could have believed that it was true, particularly in light of the objective speed calculations." Again, this ignores our standard of review, because the "assessment of the weight and credibility of the evidence [is] properly left to the jury." Commonwealth v. AdonSoto, 475 Mass. 497, 510 (2016).

5

crosswalk, the presence of several caution indicators, the absence of poor weather conditions, an unobstructed straight roadway, and the amount of roadway he had to avoid the collision, it was a reasonable inference that the defendant's attention was diverted from the roadway and ultimately the victim herself.  See Commonwealth v. Kline, 19 Mass. App. Ct. 715, 720 (1985) (evidence of negligence sufficient where "[t]he jury could conclude that the defendant at a critical moment took his eyes off the road").  See also Commonwealth v. Casale, 381 Mass. 167, 173 (1980) ("inferences drawn by the jury need only be reasonable and possible and need not be necessary or inescapable").  In other words, the evidence before the jury was sufficient to permit it to find that the defendant operated his car "negligently so as to endanger [the victim's] life or safety."  Geisler, 14 Mass. App. Ct. at 276.  See Commonwealth v. McGrath, 60 Mass. App. Ct. 685, 691 (2004).[5]

2.  Closing argument.  For the first time on appeal, the defendant claims that the prosecutor misstated the law in his closing argument by urging the jury to convict the defendant if

---

[5] The defendant's brief makes several references to the notion that he was not under the influence of alcohol and that he passed the field sobriety tests.  However, that variable adds nothing to our appellate equation where the defendant was neither charged with nor convicted of motor vehicle homicide by reason of being under the influence of alcohol.  See G. L. c. 90, § 24G (a).

it found that the collision was avoidable without regard to whether the defendant was operating negligently so as to endanger human life or safety.  As there was no objection to the argument at trial, we review to determine if there was error, and if so, whether it created a substantial risk of a miscarriage of justice.

To determine whether the prosecutor's closing argument created a substantial risk of a miscarriage of justice, and keeping in mind that "[e]rrors of this magnitude are extraordinary events and relief is seldom granted," Commonwealth v. Randolph, 438 Mass. 290, 297 (2002), we ask four questions:

> "(1) Was there error?  (2) Was the defendant prejudiced by the error?  (3) Considering the error in the context of the entire trial, would it be reasonable to conclude that the error materially influenced the verdict?  (4) May we infer from the record that counsel's failure to object or raise a claim of error at an earlier date was not a reasonable tactical decision?"

Id. at 298 (citations omitted).  "Only if the answer to all four questions is 'yes,' may we grant relief."  Id.  See Commonwealth v. Russell, 439 Mass. 340, 345 (2003); Commonwealth v. Coutu, 88 Mass. App. Ct. 686, 693 (2015).

Near the beginning of his closing argument, the prosecutor argued:

> "Now, the term 'accident' has been used throughout this trial, including during the course of the defense's closing argument, and that term by itself may often be used to describe a collision or a crash.  But it's significant in

7

the criminal context, because it has to do with liability. Who's at fault?

"And I'd submit to you, ladies and gentlemen, that a crash that is preventable or avoidable is not an accident. [And] the crash that occurred in [this] particular case was not an accident because of the circumstances surrounding it."[6]

However, one page later in the transcript, the prosecutor properly explained the four elements of motor vehicle homicide by negligent operation, noting that the prosecution had to prove each element to the jury beyond a reasonable doubt. In addition, he cautioned the jury that nothing he argued could override the judge's instructions on the law.

Turning to the first Randolph question, we answer it in the negative because there was no error, as the prosecutor did not misstate the law. Rather, his argument focused the jury on the evidence it should consider when it determined whether the defendant operated the car "recklessly or negligently so as to endanger human life or safety." Geisler, 14 Mass. App. Ct. at 276. To illustrate that, the prosecutor argued that even at the speed the defendant was driving, he should have been able to see the victim in the well-lit crosswalk, and he had ample time and distance to safely stop the car before striking her. In other words, an attentive driver who was exercising a reasonable degree of care would have been able to avoid the accident, and

_____

[6] In other portions of the prosecutor's closing argument, he also referred to the collision as avoidable.

8

the defendant's failure to do so was negligence. See Commonwealth v. Gurney, 261 Mass. 309, 312 (1927) (operator's sightlines, speed, and "opportunity to avoid" collision, all proper factors for jury to consider for motor vehicle homicide by negligent operation). Furthermore, from an evidentiary perspective, the argument was properly supported by the sergeant's testimony that the defendant "should have been able to perceive, identify, and react to the [victim]. The [defendant] had the time and distance to bring the vehicle to a stop and to avoid the [victim] and avoid the collision."

Even if the prosecutor's argument had misstated the law, we could not answer "yes" to the next two Randolph questions, i.e., was the defendant prejudiced by the error, and in context of the entire trial, would it be reasonable to conclude that the error materially influenced the verdict? As stated above, the prosecutor properly stated the elements of the crime and the Commonwealth's burden of proof. Nothing relating to the paradigm of the defendant's ability to avoid the collision detracted from those elements or the burden of proof. Finally, the judge properly instructed the jury on the elements of the crime, and the defendant does not claim otherwise. In light of these factors, the defendant suffered no prejudice, and if the prosecutor's argument had been erroneous, it would not have materially influenced the verdict. Because we do not answer all

9

four of the Randolph inquiries in the affirmative, the defendant has failed to establish that the two misstatements created a substantial risk that justice miscarried.  See <u>Randolph</u>, 438 Mass. at 298; <u>Coutu</u>, 88 Mass. App. Ct. at 693.  See also <u>Commonwealth</u> v. <u>Dresser</u>, 71 Mass. App. Ct. 454, 458 n.10 (2008) (it is defendant's burden to establish existence of substantial risk of miscarriage of justice).

<u>Judgment affirmed</u>.

By the Court (Meade, Neyman & Hand, JJ.[7]),

Assistant Clerk

Entered:  March 15, 2024.

---

[7] The panelists are listed in order of seniority.