## COMMONWEALTH *vs.* JAMES M. CURLEY.

No. 09-P-1463.

Middlesex. April 9, 2010. - October 25, 2010.

Present: BERRY, VUONO, & HANLON, JJ.

*Motor Vehicle,* Operating under the influence. *Evidence,* Breathalyzer test. *Constitutional Law,* Self-incrimination, Breathalyzer test.

At the trial of a criminal complaint charging operation of a motor vehicle while under the influence of intoxicating liquor in violation of G. L. c. 90, § 24(1)(*a*)(1), the admission in evidence of the defendant's failed efforts to take a breathalyzer test did not violate his constitutional right against self-incrimination, where the defendant did not refuse to take the breathalyzer test but, instead, signed a form indicating that he consented to the test, with the result that the following series of physical actions (which, the Commonwealth alleged, demonstrated that the defendant was trying to avoid giving a sample while appearing to try to take the test) were properly the subject of the observing officer's testimony. [166-168]

COMPLAINT received and sworn to in the Marlborough Division of the District Court Department on September 19, 2008.

The case was tried before *Jonathan Brant,* J.

*Adriana Contartese* for the defendant.

*Erin M. Bell,* Assistant District Attorney, for the Commonwealth.

HANLON, J. The defendant was convicted after a jury trial of operating a motor vehicle while under the influence of intoxicating liquor in violation of G. L. c. 90, § 24(1)(*a*)(1).[1] On appeal, he argues that the trial judge erred in permitting the Commonwealth to introduce testimony about his failed efforts to take a breathalyzer test. We affirm.

---

[1]In a subsequent, jury-waived trial, the defendant was found guilty of operating under the influence of intoxicating liquor, third offense. He was also found responsible for a civil motor vehicle infraction of failure to stop or yield, G. L. c. 89, § 8; this infraction was placed on file.

*Background.* The jury could have found the following: police Officer Craig Perry saw the defendant make an illegal right turn through a red light on Main Street in the town of Hudson at approximately 3:00 P.M. on September 18, 2008. When Perry activated the blue lights on his cruiser, the defendant accelerated and drove away; he stopped a short time later in a parking lot. The defendant told the officer that he was coming from a local bar, but he initially denied having anything to drink.[2] Perry observed the defendant with red and glassy eyes; he could smell an odor of alcohol, and the defendant's speech was slurred. The officer called for assistance, and he asked the defendant to perform certain field sobriety tests. The defendant agreed but, according to Perry, his performance was "not too good"; in fact, the officer opined that the defendant failed all of the tests and that he was too impaired by alcohol to drive. The defendant was then arrested and taken by another officer, John Donovan, to the police station.[3]

At the police station, the defendant was given an opportunity to take a breathalyzer test. Sergeant Christopher Shea, the patrol supervisor, testified that, when asked to take the test, the defendant responded with questions about the effects of alcohol, whether they depended on a person's body weight and when he had eaten, and the "timing of first and last drinks." Sergeant Shea did not answer the questions; he offered the defendant a consent form for the test, and the defendant continued to question him. Eventually, the defendant said that he wanted to take the test, but he wanted a drink of water first. Shea explained that the procedure did not permit him to take anything by mouth before taking the test. The defendant then agreed to take it and he signed the consent form.

Donovan instructed the defendant "to blow into the mouthpiece with a deep breath with his lips sealed around . . . the edge of . . . the mouthpiece so that the sample could go into the machine, and he [the defendant] kept blowing with his

---

[2] Eventually, he told Officer Perry that he had had two cocktails — a "Mai Tai" and a "Sea Breeze" — at two different locations.

[3] Donovan also noticed an odor of alcohol, slurred speech, red and glassy eyes, and an unsteady gait. The defendant told him that he had had two drinks, including a glass of wine.

[4] There was no objection to this testimony.

mouth open so the air would not go into the machine." Donovan told the jury that, if the machine does not get enough of a breath sample, it will not give a reading. Both Donovan and Shea testified that the defendant went through the process four times, each time blowing in the same way, and never producing a reading.

After the test process, the defendant began to complain that he was going "to be going into a diabetic shock." The arresting officer, Perry, who had been trained as a fire fighter and an emergency medical technician, did not see any of the symptoms that he had been trained to look for, nor did Shea. Nevertheless, an ambulance was called; paramedics arrived, and the defendant told them that his complaint was "dehydration." He was transported to a local hospital at approximately 4:30 P.M.; Perry accompanied him to the hospital because he was still in custody.

At the hospital, the defendant reiterated that he had low blood sugar; however, it was the opinion of the paramedics that "his blood sugar was fine," and the hospital staff then "did a test for dehydration" and gave him "one bag of intravenous fluid." During the hour that the defendant was at the hospital, he made a telephone call to his brother. Perry overheard the defendant's side of the conversation and testified he heard him say "he's in the hospital, he got nervous — he got pulled over by the police, he was nervous to take the test so he pulled a fast one, and then he laughed."

When the defendant was returned to the station, he demanded to take a breathalyzer test. Shea told him that the time for the test was over but he again advised the defendant of his rights under G. L. c. 263, § 5A.[5] In response, the defendant became argumentative, threatening, the sergeant testified, to "drive a car drunk again."

The defendant testified that he had gone to see his dentist in the afternoon.[6] He then went for lunch by himself at a Chinese

---

[5] General Laws c. 263, § 5A, provides an operator with the right to be examined immediately by a physician selected by him, including the right to obtain a blood test at his own expense to determine his blood alcohol level.

[6] The dentist testified that he knew the defendant, that he had filled a tooth for him that afternoon, that he had no odor of alcohol on his breath, and that he did not appear to be intoxicated.

restaurant and had a "Mai Tai." After lunch, he drove to leave a check with his attorney.[7] He then drove to meet his brother at "a bar called Yours and Mine." He had a drink called a "Sea Breeze" and left after ten minutes.[8] Perry stopped him soon afterwards, and he acknowledged making an illegal right turn on a red light.

The defendant testified that he was nervous during the field sobriety tests but he believed that he performed them well. At the police station, he told the police officers that his lips were cracked and dry and he would need "a drink of water or at least some Chapstick . . . if they wanted me to blow on that thing." He denied making any complaint about his blood sugar. His request for water was refused and, eventually, he was transported to a hospital and given intravenous fluids. He admitted speaking to his brother from the hospital and telling him that he had pulled "a fast one," an expression he testified referred to his illegal right turn on a red light. He did not disagree with the officer's description of him as laughing, saying, " did not feel in any way that I was impaired to a point where I was going to, what happened happened, so I . . . probably wasn't taking it as serious as I should have. I was in a good mood. . . . like I say, I had a coupla drinks in me, uh, I wasn't worried, I just wasn't worried, you know." Other than saying that he was dehydrated and his lips were chapped, the defendant never specifically described what happened when he tried to take the test.

*Discussion.* The defendant argues that admitting evidence of his failed breathalyzer attempts violated his right against self-incrimination because the failed attempts were tantamount to a refusal, citing *Opinion of the Justices*, 412 Mass. 1201, 1210-1211 (1992).[9]

It is well settled that evidence of a defendant's refusal to take

---

[7] The attorney testified that he saw the defendant briefly at 3:00 P.M. and exchanged pleasantries. He did not notice anything unusual about the defendant.

[8] The bartender at Yours and Mine, who went to school with the defendant and has known him for thirty years, testified that she served him a "Sea Breeze" and that she believed that he was "perfectly fine" when he walked in. She said that he stayed perhaps fifteen minutes and was fine when he left.

[9] The Commonwealth argues that the defendant did not object to the evidence when it was offered and, therefore, that the standard of review is whether any "supposed error created a substantial risk of a miscarriage of justice." Because

a chemical breath test offered by a police officer is not admissible against him in a trial for operating under the influence of intoxicating liquor. See *Opinion of the Justices*, 412 Mass. at 1211, where the court reasoned that "such refusal evidence is both compelled and furnishes evidence against oneself . . . [and] therefore would violate the privilege against self-incrimination of art. 12" of the Massachusetts Declaration of Rights. See also G. L. c. 90, § 24(1)(*e*)[10]; *Commonwealth* v. *Healy*, 452 Mass. 510, 513 (2008) ("It is well settled in Massachusetts that a defendant's refusal to submit to a blood alcohol or field sobriety test is inadmissible at trial"); *Commonwealth* v. *Ranieri*, 65 Mass. App. Ct. 366, 370-371 (2006).[11]

The underlying rationale for this holding is that "a defendant's refusal is the equivalent of his statement, 'I have had so much to drink that I know or at least suspect that I am unable to pass the test.' . . . Based on this analysis, evidence of a refusal to submit to a requested breathalyzer test is testimonial in nature." *Opinion of the Justices*, 412 Mass. at 1209. Such a statement is compelled, the court reasoned, by the choice ordinarily facing such a defendant. "The accused is thus placed

---

we find no error, it is not necessary to determine whether the standard of review is substantial risk of a miscarriage of justice or harmless error. However, we note that the defendant *did* object to this evidence. He filed a motion in limine, seeking to have it excluded, as the Commonwealth concedes, and the motion judge, who was also the trial judge, denied the motion. The defendant objected at that time, and he objected twice during the trial when the evidence was offered.

[10]General Laws c. 90, § 24(1)(*e*), as amended through St. 2003, c. 28, §§ 3 and 4, provides, in pertinent part, "In any prosecution for a violation of paragraph (*a*), evidence of the percentage, by weight, of alcohol in the defendant's blood at the time of the alleged offense, . . . as indicated by a chemical test or analysis of his breath, shall be admissible and deemed relevant to the determination of the question of whether such defendant was at such time under the influence of intoxicating liquor; provided, however, that if such test or analysis was made by or at the direction of a police officer, it was made with the consent of the defendant . . . . *Evidence that the defendant failed or refused to consent to such test or analysis shall not be admissible against him in a civil or criminal proceeding* . . ." (emphasis supplied).

[11]The court has extended the same analysis to a refusal to perform field sobriety tests. See *Commonwealth* v. *McGrail*, 419 Mass. 774, 779-780 (1995) ("We see very little difference between evidence of refusal to take a breathalyzer test and refusal to take a field sobriety test"); *Commonwealth* v. *Grenier*, 45 Mass. App. Ct. 58, 61-62 (1998); *Commonwealth* v. *Ranieri*, 65 Mass. App. Ct. at 371-373.

in a 'Catch-22' situation: take the test and perhaps produce potentially incriminating real evidence; refuse and have adverse testimonial evidence used against him at trial." *Id.* at 1211.

In this case, the defendant did *not* refuse to take the breathalyzer test; had he done so, evidence of that refusal would have been inadmissible against him. Instead, he signed a form indicating that he *consented* to take the test.[12] What followed — a series of physical actions — was properly the subject of the observing police officer's testimony. This is not the "Catch 22" situation that gave rise to the court's concern in *Opinion of the Justices, supra* — one in which a criminal defendant has no choice but to provide incriminating evidence against himself. This defendant had a choice that would not have incriminated him, that is, he could have refused to take the breathalyzer test.[13] Instead, he chose to sign the consent form. Thereafter, the jury could have inferred from his actions, as the Commonwealth argued, that he was trying to avoid giving a sample while appearing to try to take the test. Accordingly we conclude that the evidence was properly admitted.[14]

*Judgment affirmed.*

---

[12]In another context, this court has held that "[t]he consent to take the test impliedly contemplates the taking of a valid test (one that would be admissible in court)." *Commonwealth* v. *Sabourin*, 48 Mass App. Ct. 505, 506 (2000).

[13]This case is also distinguishable from cases where the defendant's *statements* about his ability to do field sobriety tests were deemed testimonial evidence revealing his own assessment of his sobriety. See *Commonwealth* v. *Grenier*, 45 Mass. App. Ct. at 61-62 ("Although he offered the excuse that he was not trained to do the test, the jury would have been warranted in inferring that he thought he could not do the test because he had had too much to drink").

[14]We decline to address the defendant's remaining and unsupported arguments, that admission of his "attempts" to take the breathalyzer test forced him to testify and that, because he also suffered driver's license consequences with the registrar for not completing the test, it was somehow unfair that the evidence was used against him in his criminal trial. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).