NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11978

COMMONWEALTH  vs.  GLENIS A. ADONSOTO.


Norfolk.     February 11, 2016. - September 16, 2016.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, &
Hines, JJ.[1]


Motor Vehicle, Operating under the influence.  Constitutional
     Law, Self-incrimination, Breathalyzer test, Confrontation
     of witnesses.  Evidence, Breathalyzer test, Hearsay.
     Interpreter.  Practice, Criminal, Interpreter, Hearsay,
     Confrontation of witnesses, Instructions to jury.



     Complaint received and sworn to in the Stoughton Division
of the District Court Department on July 23, 2012.

     The case was tried before James H. McGuiness, Jr., J.

     The Supreme Judicial Court granted an application for
direct appellate review.


     Christopher DeMayo for the defendant.
     Varsha Kukafka, Assistant District Attorney, for the
Commonwealth.
     Eric R. Atstupenas, for Massachusetts Chiefs of Police
Association, Inc., amicus curiae, submitted a brief.

_____

     [1] Justices Spina, Cordy, and Duffly participated in the
deliberation on this case prior to their retirements.

HINES, J.  The defendant, Glenis A. AdonSoto, was convicted by a jury of operating a motor vehicle while under the influence of intoxicating liquor, G. L. c. 90, § 24 (1) (a) (1).  The defendant, whose native language is Spanish, was stopped in the early morning hours of July 22, 2012, by a Stoughton police officer in response to a telephone call from a concerned driver.  After the defendant was arrested and transported to the police station, the police secured the services of a telephonic language interpreter service to read the defendant her rights and instruct her on how to perform the breathalyzer test.  The defendant did not properly perform the test during three attempts, producing no usable result.  At the trial, the judge admitted in evidence the defendant's failure to perform the breathalyzer test.

The defendant appealed, asserting as error (1) the admission of her failure to produce a usable breathalyzer result, claiming that it should have been excluded as "refusal" evidence under G. L. c. 90, § 24 (1) (e); (2) the admission of the interpreter's English language version of her statements as hearsay and a violation of her constitutional right of confrontation; (3) insufficiency of the evidence of impairment; and (4) prejudicial errors in the instructions to the jury.  We granted the defendant's application for direct appellate review.

We affirm the conviction based on our conclusions that the failure to properly perform a breathalyzer test after giving consent is not inadmissible as refusal evidence; that the police-appointed interpreter acted as the defendant's agent in the circumstances of this case, and thus, the statements were not hearsay; that the defendant's unpreserved confrontation claim is unavailing, as there is no showing of a substantial risk of a miscarriage of justice; that the evidence was sufficient to establish her impairment; and that the jury instructions did not create prejudicial error.[2]

Background. We recite the facts the jury could have found, reserving certain details for our discussion of the specific issues raised. At approximately 2:30 A.M. on July 22, 2012, a Stoughton resident who had just left his home to drive to work noticed the defendant driving down the middle of a two-lane road, straddling the solid double-yellow line. A tractor-trailer truck driving in the opposite direction blew his horn as a warning signal to the defendant. The resident was driving in the same direction as the defendant, and he followed behind her for ten to twelve minutes. There was "extremely light traffic" at the time. The defendant swerved back and forth in her lane, and she crossed the fog line approximately twenty times.

---

[2] We acknowledge the amicus brief submitted by the Massachusetts Chiefs of Police Association, Inc.

While following the defendant, the resident called the Stoughton police. In response, a Stoughton police officer stopped his police cruiser in the roadway along the route that the defendant's vehicle was traveling. The officer observed the defendant drive through a four-way stop intersection without stopping. He activated his lights and followed her, and she stopped.

The defendant was alone in the vehicle. The officer smelled the odor of alcohol through the vehicle's open window and noticed that the defendant's eyes were glassy. The defendant responded to the officer's questions in Spanish and, although he knew only a "little" Spanish, he knew enough to notice that her speech was slurred. He ordered the defendant out of the vehicle. She was unsteady on her feet, but the officer could not perform a field sobriety test because he could not effectively communicate with her in a language that they both understood. He arrested the defendant and took her to the police station.

When they arrived, the officer telephoned a telephonic language interpreter service to speak to a "registered, certified interpreter." The telephone was placed on speakerphone loud enough for the officer and defendant to hear the conversation. The telephone call was not recorded. The officer read the defendant the Miranda rights in English, and

the interpreter relayed them to the defendant in Spanish.  The defendant nodded her head up and down while the interpreter was speaking and when asked if she understood, she responded, "Yes," in Spanish.  The defendant explained to the interpreter that she had been at a friend's house and because the friend was intoxicated, she borrowed her friend's vehicle to drive herself home.  The officer, through the interpreter, asked if the defendant would take a breathalyzer test, and the defendant agreed.  The officer explained the instructions, and the interpreter relayed them in Spanish.  The interpreter asked the defendant in Spanish if she understood the instructions, and she verbally responded, "Yes."

The officer explained that "[y]ou have to seal your lip[s] tightly around the . . . mouthpiece and blow until the machine tells you to stop" in order for the breathalyzer to read a result.  The defendant did not properly seal her lips during the first test, and the officer then physically demonstrated the instructions.[3]  After the demonstration, the officer asked through the interpreter if the defendant understood him, and "she nodded 'Yes' up and down."  The defendant did not seal her lips around the mouthpiece when the officer administered the

---

[3] The police officer described the defendant's actions as having both sides of her mouth exposed from the mouthpiece that she was supposed to seal her lips around and blow into, so that "air was going all over the place."

test a second and third time.  After the second test, the officer explained the instructions again and stated that the breathalyzer machine allowed three attempts so there was only one more chance to perform the test correctly.  There were no results from any of the three attempts.

Discussion.  1.  Evidence of failed breathalyzer test.  The defendant claims that the judge erroneously admitted evidence of her failure to properly complete the breathalyzer test, arguing that evidence of a defendant's "failure" or "refusal" to take a breathalyzer test is inadmissible in a civil or criminal proceeding as it is excluded under G. L. c. 90, § 24 (1) (e).  The defendant also argues that the evidence should have been excluded under Mass. G. Evid. § 403 (2016), because any probative value was substantially outweighed by the danger of unfair prejudice.  The defendant's arguments are unavailing.

Exclusion of refusal evidence is based on a defendant's privilege against self-incrimination under art. 12 of the Massachusetts Declaration of Rights.  Commonwealth v. Lopes, 459 Mass. 165, 170 (2011), quoting Opinion of the Justices, 412 Mass. 1201, 1211 (1992).  In Opinion of the Justices, supra, we stated that a person's refusal to take a breathalyzer test is testimonial in nature because it creates a "'Catch-22' situation," where a defendant would be forced to "take the test and perhaps produce potentially incriminating real evidence;

refuse and have adverse testimonial evidence used against him at trial." We explained that a refusal is akin to a defendant stating, "I have had so much to drink that I know or at least suspect that I am unable to pass the test," and accordingly, may not be admitted at trial. Id. at 1209. That rationale for exclusion of refusal evidence does not apply where, as here, the defendant initially consented to the test.[4]

The Appeals Court reached this conclusion in Commonwealth v. Curley, 78 Mass. App. Ct. 163, 167-168 (2010), on which the

---

[4] As additional support for her argument, the defendant cites 501 Code Mass. Regs. § 2.16 (2010), entitled, "Breath Test Refusal," which instructs officers to mark a failed performance as a "refusal," and provides:

> "If after being advised of his or her rights and the consequences of refusing to take a breath test, the arrestee refuses to submit to a breath test, none shall be given. The Registry of Motor Vehicles (RMV) shall be notified of such refusal in a format approved by the Registrar. If at any time following an arrestee's initial consent to the breath test and prior to the successful completion of the test, the arrestee refuses to participate or declines to cooperate, the test shall be terminated and it shall be noted as a refusal. If the arrestee fails to supply the required breath samples upon request, the test shall be terminated and it shall be noted as a refusal" (emphasis added).

When the emphasized language is read together with the remainder of the provision, however, it is clear that the regulation ensures that failure to properly perform a breathalyzer test does not allow a person to avoid the automatic 180-day suspension of his or her driver's license under the so-called implied consent statute, G. L. c. 90, § 24 (f) (1). We do not consider a "refusal" under this regulation to be a "refusal" for constitutional purposes.

judge relied in allowing the Commonwealth's motion in limine to admit the disputed evidence. The Appeals Court analyzed whether a defendant's failure to properly perform a breathalyzer test after giving consent was testimonial in nature and thus, required exclusion as "refusal" evidence. Id. The court concluded that the evidence was properly admitted because consent vitiated the defendant's self-incrimination claim, and the jury could have inferred that the defendant "was trying to avoid giving a sample while appearing to try to take the test." Id. at 168. The defendant recognizes that the judge properly relied on Curley, but she distinguishes it, claiming that in her case there was a likelihood that she was "simply confused and flustered by the language barrier and the use of a remote translator" instead of deliberately trying to frustrate the breathalyzer machine. The defendant's initial consent to the breathalyzer test, however, was all that was required for admissibility. See id. Cf. Opinion of the Justices, 412 Mass. at 1211. Any explanation for the failure to complete the test was properly left to the jury.

Moreover, where the defendant and officer effectively communicated through physical actions, there was little danger of unfair prejudice from a potential misunderstanding during the translation. The interpreter verbally advised the defendant of translated instructions, the defendant acknowledged her

understanding of the verbal instructions by stating "Yes," the police officer physically demonstrated the instructions, and the defendant acknowledged her understanding of the physical instructions by "nodd[ing] 'Yes' up and down."

2. <u>Hearsay and confrontation claim</u>. The defendant next argues that admission of her statements violated the rule against hearsay and her right to confrontation under the Sixth Amendment of the United States Constitution and art. 12. The defendant's challenge arises from the testimony of the police officer, who relayed the content of the defendant's statements at trial, even though the officer only heard and understood the interpreter's English language version of those statements. A defendant's own statements are admissible as statements of a party opponent. Mass. G. Evid. § 801(d)(2)(A) (2016). The issue is whether the statements still may be considered those of the defendant where they are communicated through an interpreter to a third party and the third party testifies to the statements at trial.

a. <u>Hearsay</u>. Generally, out-of-court statements offered to establish the truth of the matter asserted are inadmissible at trial as hearsay. See Mass. G. Evid. § 802 (2016). Statements "authorized" by the defendant or made by an "agent" of the defendant, however, are not hearsay and are admissible as those of the defendant. Mass. G. Evid. § 801(d)(2)(C),(D). We

previously have considered an interpreter to be a "joint agent" for persons choosing to speak through an interpreter, and therefore, admitted the translated statements as those of the speaker.  See Commonwealth v. Vose, 157 Mass. 393, 395 (1892) (where parties jointly agree to use interpreter, "words of the interpreter, which are [the] necessary medium of communication, are adopted by both, and made a part of their conversation as much as those which fall from their own lips").  See also O'Brien v. Bernoi, 297 Mass. 271, 273 (1937) (translated statements of defendant, made by defendant's son, properly admitted through plaintiff's testimony).

The defendant argues that the interpreter may not be viewed as her agent because the interpreter was appointed by the police.  Although no appellate court in Massachusetts has analyzed this specific issue, other jurisdictions have rejected similar challenges.  See, e.g., United States v. Charles, 722 F.3d 1319, 1321, 1326-1327 (11th Cir. 2013) (admission of government-appointed interpreter's out-of-court translated statements not hearsay violation because interpreter agent of, or authorized by, defendant); United States v. Da Silva, 725 F.2d 828, 832 (2d Cir. 1983) (same).  See also United States v. Vidacak, 553 F.3d 344, 352 (4th Cir. 2009) (government-contracted interpreter "language conduit" for speaker); United States v. Sanchez-Godinez, 444 F.3d 957, 960-961 (8th Cir. 2006)

(Federal agent was agent for defendant in "language conduit" capacity but was not as interrogating officer); United States v. Beltran, 761 F.2d 1, 5, 9 (1st Cir. 1985) (State-appointed interpreter agent of, or authorized by, defendant).

We agree with the defendant that a government-appointed interpreter should not always to be considered an agent for the speaker, but in the circumstances of this case, we conclude that the interpreter acted as an agent of the defendant.  To determine whether an interpreter acts as an agent or language conduit for the speaker, we rely on the factors outlined by the United States Court of Appeals for the Ninth Circuit in United States v. Orm Hieng, 679 F.3d 1131, 1139 (9th Cir.), cert. denied, 133 S. Ct. 775 (2012).  The relevant factors include "which party supplied the interpreter, whether the interpreter had any motive to mislead or distort, the interpreter's qualifications and language skill, and whether actions taken subsequent to the conversation were consistent with the statements as translated."  Id., quoting United States v. Nazemian, 948 F.2d 522, 527 (9th Cir. 1991), cert. denied, 506 U.S. 835 (1992).

Although the police supplied the interpreter, and thus, the first factor weighs in favor of the defendant's claim, on the specific facts of this case, the remaining factors demonstrate that the interpreter was acting as an agent of the defendant.

First, the defendant's actions were consistent with the statements as translated.  The officer, through the interpreter, read the defendant her rights and, in response, the defendant nodded her head "up and down" and verbally stated, "Yes," in Spanish.  Moreover, after the officer's verbal instructions about how to perform the breathalyzer test, the defendant performed most of the actions as instructed -- bringing the mouthpiece to her lips and blowing into the hose.  The defendant failed to properly seal her lips around the mouthpiece, but her conduct indicated that the translator properly relayed at least part of the instructions.  Also, the interpreter's qualifications were not in dispute.  The officer testified that the interpreter was "registered" and "certified," and trial counsel did not challenge these descriptions.  Last, there is no indication that the interpreter, obtained through a third-party interpreter service, had any motive to distort the translation.  In these circumstances, the interpreter may properly be considered an agent of the defendant for hearsay purposes, negating exclusion on hearsay grounds.[5]  See Mass. G. Evid. § 801(d)(2)(D).

-----

[5] Generally, a judge must make a preliminary finding of fact that the agent was authorized to act on the subject or within the scope of the relationship before statements are admitted under Mass. G. Evid. § 801(d)(2)(C) or (D) (2016).  See Mass. G. Evid. § 104(a) (2016).  See also Commonwealth v. Irene, 462

b.  Confrontation clause.  The defendant argues that even
if the statements made through the interpreter are not hearsay,
admission of the statements violated her confrontation rights
under the Sixth Amendment and art. 12.  The confrontation clause
of the Sixth Amendment to the United States Constitution
guarantees a defendant the opportunity to confront the declarant
of "testimonial" statements to be used against him or her at
trial in the "crucible of cross-examination."  Crawford v.
Washington, 541 U.S. 36, 50-52, 59, 61 (2004) (Crawford).  The
right to confrontation embodied in art. 12 is "coextensive with
the guarantees of the Sixth Amendment."  Commonwealth v.
Zeininger, 459 Mass. 775, 785 n.15, cert. denied, 132 S. Ct. 462
(2011), quoting Commonwealth v. De Oliveira, 447 Mass. 56, 57n.1
(2006).  The defendant did not object to the police officer's
testimony on these grounds.  Therefore, we review the
defendant's claim for a substantial risk of a miscarriage of
justice.  Commonwealth v. Traylor, 472 Mass. 260, 267 (2015),

---

Mass. 600, 606 n.13, cert. denied, 133 S. Ct. 487 (2012).  The
judge also must instruct the jury to consider the evidence only
if they find the same.  Id.  The defendant did not claim any
error in this regard, and we conclude that any error did not
create a substantial risk of a miscarriage of justice for the
reasons discussed in this decision.  Judges considering
admissibility of translated statements through an alleged agent
should analyze the factors discussed in United States v. Orm
Hieng, 679 F.3d 1131, 1139 (9th Cir.), cert. denied, 133 S. Ct.
775 (2012), as set forth above, in making such a determination.

quoting Commonwealth v. LaChance, 469 Mass. 854, 857 (2014), cert. denied, 136 S. Ct. 317 (2015).

As discussed above, the defendant's statements in this case are not hearsay because the interpreter was acting as an agent of the defendant.  Nonetheless, confrontation rights are not governed by common-law hearsay determinations.  See Crawford, 541 U.S. at 61.  See also Melendez-Diaz v. Massachusetts, 557 U.S. 305, 317 (2009) (rejecting "invitation to return to [the rule] that evidence with 'particularized guarantees of trustworthiness' was admissible notwithstanding the Confrontation Clause" [citation omitted]).  The Sixth Amendment precludes a mechanical application of the hearsay rule to permit the admission of the defendant's statements to the interpreter, particularly where the reliability and trustworthiness concerns implicit in Crawford are extant.

Federal courts, in the absence of guidance from the United States Supreme Court post-Crawford, have grappled with the issue of a defendant's right to confrontation of an interpreter, reaching different outcomes.[6]  The defendant relies on United

---

[6] Prior to Crawford v. Washington, 541 U.S. 36 (2004), the prevailing view was of an interpreter as a "mere language conduit" for language and that the confrontation clause did not apply.  United States v. Nazemian, 948 F.2d 522, 528 (9th Cir. 1991), cert. denied, 506 U.S. 835 (1992).  See United States v. Beltran, 761 F.2d 1, 9 (1st Cir. 1985); United States v. Da Silva, 725 F.2d 828, 832 (2d Cir. 1983).  We question the

States v. Charles, 722 F.3d at 1324-1325, in which the United States Court of Appeals for the Eleventh Circuit concluded that the defendant has a right to cross-examine an interpreter where the interrogating officer testified to the English language version of the defendant's Creole language statements because the interpreter was the "declarant" of English language statements.[7]  In Orm Hieng, 679 F.3d at 1139-1141, the United States Court of Appeals for the Ninth Circuit, expressly recognizing that Crawford may have changed the analysis for the right of confrontation, nonetheless declined to depart from its ruling in an earlier case that "a person may testify regarding statements made by the defendant through an interpreter without raising either hearsay or Confrontation Clause issues because the statements are properly viewed as the defendant's own, and the defendant cannot claim that he was denied the opportunity to confront himself."  Orm Hieng, supra at 1139, citing Nazemian, 948 F.2d at 525-526.  The court held that there was no

---

validity of these earlier decisions inasmuch as they predate Crawford and rely in large part on the reliability principles that Crawford and its progeny deemed insufficiently protective of a defendant's confrontation rights.

[7] The court concluded, however, that it was not "plain" error to admit the testimony without such cross-examination because, prior to that decision, there was no binding circuit precedent or "Supreme Court precedent clearly articulating that the declarant of the statements testified to by the [Customs and Border Protection] officer is the language interpreter."  United States v. Charles, 722 F.3d 1319, 1331 (11th Cir. 2013).

confrontation clause issue because the analysis was the same for hearsay and confrontation clause purposes.  Orm Hieng, supra at 1140-1141.

We have not previously considered whether, for the purposes of the confrontation clause, an interpreter is the "declarant," in which case the defendant would be entitled to the right of confrontation, unless the witness is unavailable and the defendant has had an opportunity for cross-examination. Although the issue is significant for the development of our criminal and constitutional jurisprudence, we decline to wade into this thicket of unsettled constitutional principles where, at least as concerns the Sixth Amendment, the Supreme Court has not yet provided guidance, and where, in any event, it is unnecessary to do so because we can decide the issue in this case on State constitutional grounds.  See Commonwealth v. Raposo, 453 Mass. 739, 743 (2009), quoting Commonwealth v. Paasche, 391 Mass. 18, 21 (1984) ("We do not decide constitutional questions unless they must necessarily be reached").

We are content to bypass the issue in this case because, even if the defendant's confrontation rights attached to the statements of the interpreter offered at trial, she has not demonstrated a substantial risk of a miscarriage of justice. Moreover, the procedure we announce infra, requiring, when

practicable, the recording of a defendant's statement for which an interpreter is employed, would satisfy future concerns about reliability, such as those asserted by the defendant in this appeal.

Here, the defendant's statements to the police as reported by the interpreter were not inculpatory on the central issue at trial:  impairment.  The officer testified to the English-language version of the following statements made by the defendant through the interpreter:  (1) her nodding or saying "Yes," in response to questions regarding whether the defendant understood her rights, consented to the breathalyzer test, and understood the instructions for taking the test; and (2) that the defendant "was at a friend's house, her friend was intoxicated so she decided to take the friend's car and drive herself home.  She felt it was the right thing to do."[8]  The defendant's explanation about why she was driving is not relevant to the issue of impairment, nor is the verbal acknowledgement that she understood her rights or consented to take the breathalyzer test.  The defendant's affirmative response to whether she understood the instructions regarding

_____

[8] When reviewing a challenge based on the confrontation clause, we look to the statements made by, not the questions posed to, the declarant.  Davis v. Washington, 547 U.S. 813, 822 n.1 (2006) ("it is in the final analysis the declarant's statements, not the interrogator's questions, that the Confrontation Clause requires us to evaluate").

the breathalyzer test is potentially relevant to the impairment issue in that, if the jury believed that the defendant understood the instructions, they could interpret the defendant's failure to perform the test correctly either to mean that the defendant was too impaired to properly follow the directions or to suggest a consciousness of guilt.  In either event, we conclude that this statement was not likely to affect the result at trial because it was merely cumulative of properly admitted evidence.  See Commonwealth v. Salcedo, 405 Mass. 346, 350 (1989).  The officer testified that the defendant acknowledged her understanding by nodding her head up and down after the interpreter verbally instructed her on how to perform the test and he physically demonstrated the required actions.

3.  Electronic recording of language interpreter services. Although we reject the claim concerning the admission of the interpreter's statements through testimony of the police officer, it is appropriate to address the defendant's complaint that our current procedure lacks a method for assessing the reliability of an interpreter's translation of a defendant's statements.  We now announce a new protocol to mitigate such concerns.  Going forward, and where practicable, we expect that all interviews and interrogations using interpreter services

will be recorded.[9]  We have long recognized that recording
interviews and interrogations enhance reliability by providing a
complete version of a defendant's statements.  See Commonwealth
v. DiGiambattista, 442 Mass. 423, 441-442 (2004).  This new
protocol fits squarely in the line of cases recognizing the
value of recordings to the fairness of criminal proceedings, but
stopping short of requiring recordings for admissibility.  See
id. at 449.

This protocol should not impose undue burden on police
departments.  We are advised by amicus, the Massachusetts Chief
of Police Association, Inc., that the use of telephonic language
interpreter services is a regular practice in several State
agencies.  Telephonic language services rely on interpreters
located in different States and different countries, and these
interpreters may not be always be available to testify at
trial.[10]  These services provide police officers the ability to

---

[9] The defendant must be advised that the conversation is
being recorded.  See Commonwealth v. Boyarsky, 452 Mass. 700,
705 (2008), citing Commonwealth v. Jackson, 370 Mass. 502, 507
(1976) ("A recording that is made with the actual knowledge of
all parties is not an interception, even if they have not
affirmatively authorized or consented to it).  Cf. G. L. c. 272,
§ 99 (B) (4), (C) (1) (prohibiting secret recordings).  Any
statements made by a defendant after being advised of the
recording are deemed to be made with consent to the recording.

[10] Several police departments, including the Stoughton
police department use LanguageLine Solutions.  LanguageLine
Solutions advertises available positions for interpreters in ten

communicate with speakers of many different foreign languages in a prompt and efficient manner.[11]  Police departments record interviews regularly at station houses and, as here, the use of these services often takes place at the station.  In those circumstances, all that would be required is for police to conduct the speakerphone translation in a room equipped for recording and to engage the recording equipment.  Thus, it will be the rare case where the police will be unable to record the interview.

The implementation of this protocol will provide significantly enhanced protections and assurances of reliability for defendants who speak through an interpreter.  Reliability is an essential factor of due process to the defendant.  See Commonwealth v. Camblin, 471 Mass. 639, 648-649 (2015), quoting Commonwealth v. Given, 441 Mass. 741, 747 n.9, cert. denied, 543 U.S. 948 (2004) ("due process demands that evidence be reliable in substance").  A recording allows defendants and judges to independently evaluate accuracy, and thus, the reliability of

---

countries.  See LanguageLine Solutions, Interpreter Careers, https://www.languageline.com/careers/interpreters-overview [https://perma.cc/G8G4-QUUJ].

[11] LanguageLine advertises that it employs "professional interpreters fluent in 240+ languages" and can connect a telephone caller "within seconds," any time of any day, to an interpreter.  See LanguageLine Solutions, Phone Interpreting, https://www.languageline.com/interpreting/phone [https://perma.cc/R73E-QYLK].

interpreter services.  See Commonwealth v. Portillo, 462 Mass. 324, 332 (2012).  That reliability is further enhanced by application of the rule in Portillo, supra, requiring the Commonwealth to provide the defendant with a translated transcript of a recording containing foreign-language statements that it intends to use as evidence.

Additionally, this protocol will provide a method to determine whether the confrontation clause applies at all. "Crawford 'does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.'"  Commonwealth v. Greineder, 464 Mass. 580, 590, cert. denied, 134 S. Ct. 166 (2013), quoting Williams v. Illinois, 132 S. Ct. 2221, 2235 (2012).  If we had not concluded that the interpreter was acting as the defendant's agent for hearsay analysis, we would have reviewed the purpose for which the statements were offered as part of our determination as to whether the testimony violated the hearsay rules or confrontation clause.  See Commonwealth v. Pytou Heang, 458 Mass. 827, 854 (2011), quoting Commonwealth v. Hurley, 455 Mass. 53, 65 n.12, (2009) (confrontation clause and hearsay analysis depends on whether statement is "offered to prove the truth of the matter asserted").  Here, the Commonwealth introduced the officer's testimony of those statements, as translated by the interpreter, for their truth.  Indeed, the relevancy of the

officer's testimony in this regard was dependent upon the jury accepting the accuracy of the translation. See generally Commonwealth v. Jones, 472 Mass. 707, 714 (2015) (reviewing relevancy of out-of-court statements). If, however, the translation was not accurate, the statements would not be introduced for their truth. Along with providing a method to gauge reliability, a recording of the translation provides an independent basis to evaluate the truth of the testimony for purposes of determining the applicability of the confrontation clause.

In this appeal, the defendant does not quarrel with the actual translation provided by the interpreter. Rather, she claims only that the translation may not be reliable or accurate because of her asymmetric relationship with the police and the prosecutor. Although the availability of a recording and a transcript of the interview in this case would have allowed defense counsel to address any issues with the accuracy of the translation in advance of trial, see Portillo, supra, we discern no basis on this record to conclude that the translation was not reliable or accurate.

4. Sufficiency of the evidence. The defendant argues that the judge erred in denying her motion for a required finding of not guilty. We review a claim of sufficiency of the evidence under the oft-repeated Latimore standard, viewing the evidence

in the light most favorable to the Commonwealth. Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979). "[T]he evidence and the inferences permitted to be drawn therefrom must be 'of sufficient force to bring minds of ordinary intelligence and sagacity to the persuasion of [guilt] beyond a reasonable doubt.'" Commonwealth v. Semedo, 456 Mass. 1, 8 (2010), quoting Latimore, supra at 677. It is for the jury to assess the weight and credibility of the evidence. Commonwealth v. Forte, 469 Mass. 469, 481 (2014). There was no error.

To obtain a conviction of operating a vehicle while intoxicated, the Commonwealth must prove that the defendant (1) physically operated a vehicle; (2) "on a public way or place to which the public has a right of access; and (3) had a blood alcohol content percentage of .08 or greater or was impaired by the influence of intoxicating liquor." Zeininger, 459 Mass. at 778, citing G. L. c. 90, § 24 (1) (a) (1). Only the third element is in dispute here. To establish that the defendant was under the influence, the Commonwealth must prove a diminished capacity to operate safely. Commonwealth v. Jewett, 471 Mass. 624, 635-636 (2015), quoting Commonwealth v. Connolly, 394 Mass. 169, 173 (1985).

The Commonwealth presented sufficient evidence of diminished capacity. Specifically, a driver who followed the defendant for ten to twelve minutes testified to her erratic

driving: swerving, straddling the solid-double center line, and crossing the fog lines approximately twenty times. The police officer testified to the odor of alcohol coming from the defendant, slurred speech, unsteadiness when standing, and glassy eyes. These characteristics are evidence supporting a finding of impaired driving. See Jewett, 471 Mass. at 636. See also Commonwealth v. Lavendier, 79 Mass. App. Ct. 501, 506-507 (2011) (describing "obvious signs of . . . intoxication [slurred speech, belligerent demeanor, strong odor of alcohol, poor balance, and glassy, bloodshot eyes]"); Commonwealth v. Reynolds, 67 Mass. App. Ct. 215, 218-219 (2006) (swerving in good road conditions supports finding of diminished capacity). Although the defendant minimizes the effect of this evidence -- asserting that she was an "inexperienced" driver, but not impaired -- the assessment of the weight and credibility of the evidence was properly left to the jury. Forte, 469 Mass. at 481.

5. Jury instructions. Last, the defendant challenges the omission of certain words during three portions of the jury instructions. Because the defendant did not object, we review this claim to determine if it created a substantial risk of a miscarriage of justice. Commonwealth v. Alphas, 430 Mass. 8, 15 (1999). "Jury instructions must be construed as a whole to prevent isolated misstatements or omissions from constituting

reversible error where there is little chance that the jury would have misunderstood the correct import of the charge." Commonwealth v. Oliveira, 445 Mass. 837, 844 (2006), citing Commonwealth v. Owens, 414 Mass. 595, 607 (1993).

The record reflects that the judge omitted words from the model jury instructions in three instances. First, when instructing on the presumption of innocence, the judge should have said, "It requires you to find the defendant not guilty unless," but he omitted "not guilty." See Instruction 2.160 of the Criminal Model Jury Instructions for Use in the District Court (2009). Second, when instructing on credibility of witnesses, the judge said, "You should give the testimony of each witness whatever degree you believe and what you judge it is fairly entitled to receive," where the model instruction reads, "You should give the testimony of each witness whatever degree of belief and importance that you judge it is fairly entitled to receive." See Instruction 2.260 of the Criminal Model Jury Instructions for Use in the District Court. Last, the judge omitted the words "a reasonable" from the following sentence in the reasonable doubt instruction: "That is what we mean by proof beyond a reasonable doubt." See Instruction 2.180 of the Criminal Model Jury Instructions for Use in the District Court.

26

Each of these omissions is properly characterized as a "slip of the tongue" and was not likely to mislead the jury where the charge as a whole properly conveyed the instructions. See Commonwealth v. Grant, 418 Mass. 76, 84 (1994). Accordingly, the jury instructions did not create a substantial risk of a miscarriage of justice.

Judgment affirmed.