NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

21-P-940

COMMONWEALTH

vs.

MICHAEL GONZALEZ.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a jury trial, the defendant was convicted of multiple offenses relating to an armed robbery of his coworker's apartment. The defendant claims error in (1) the denial of his motion to suppress and (2) the admission of an unredacted audio recording at trial. We affirm.

Background. We summarize the evidence presented at trial and in the record, reserving additional facts for later discussion. Around 1:40 A.M. on July 22, 2015, the defendant, with two other men, broke into his coworker's apartment and stole marijuana plants. Of the intruders, only the defendant had been to the apartment before and knew where the plants were located. While taking the plants from an upstairs bedroom, the defendant shot one of the apartment residents (the roommate) in

the leg.[1]  The defendant then fled the apartment and disposed of the gun in the woods.

Later that morning, the defendant went to a hospital emergency room with abdominal pain from a bowel obstruction related to his Crohn's disease.  He was placed in a room within the emergency room area and given medication (Dilaudid, oxycodone, and Benadryl) throughout the day.

Around 12:30 P.M. that same day, two police officers arrived at the hospital to interview the defendant.  They found him awake and sitting up in his hospital bed.  At some point during the first interview, which was not recorded, the defendant admitted that he had been involved in the robbery.

At about 2:30 P.M., in the presence of both officers, the defendant consented to the audio recording of a second interview.  During the recorded interview, the defendant recounted specific details about the robbery.  He denied firing the gun and admitted to disposing of it.  He attempted to exculpate himself by stating, among other things, that he was pressured into participating in the robbery and "didn't want to be involved" and by asking if it would "help [his] case" to give the officers his clothes, which he said had no blood on them. At one point, a doctor arrived to tend to the defendant; the

---

[1] The gunshot wound ultimately resulted in the amputation of the roommate's leg.

2

officers paused the interview and left the room.  The interview ended when the defendant said he was "a little. . . high" and asked to end it.

The defendant remained hospitalized for five days.  While in the hospital, he made several calls to one of the officers, and on July 27, he consented to another recorded interview.[2] Before this interview, the defendant was advised of, and waived, his Miranda rights.  Police interviewed him for about two hours, at which point the defendant asked to stop the recording.  After the recorder was turned off, the defendant confessed that he shot the victim.

The defendant moved unsuccessfully to suppress all statements made to officers on July 22, as well as other evidence, as fruits of the poisonous tree.[3]  At the suppression

---

[2] Unlike the July 22 interviews, which took place before the defendant had been admitted to the hospital, the July 27 interview was conducted in the defendant's private hospital room.

[3] The defendant argued that he was not given Miranda warnings until after the first unrecorded interview had begun, and that, due to his pain medication, his statements were not voluntarily made.  He further argued that he was unable to freely, intelligently, and voluntarily waive his Miranda rights in the recorded interviews because he remained on painkillers.  The admission of those statements, he argued, would violate his constitutional rights under the Fifth and Fourteenth Amendments to the United States Constitution and under art. 12 and art. 14 of the Massachusetts Declaration of Rights.  The defendant also argued that the police improperly seized his cell phone without a warrant in violation of the Fourth and Fourteenth Amendments, and arts. 12 and 14.

3

hearing, the motion judge heard testimony from the officers and from the defendant's expert witness, a board-certified physician who had not examined the defendant and testified about the defendant's medications based on his medical records.

The judge denied the motion to suppress, finding that the defendant was not in custody when questioned by police on July 22 and that his statements were voluntary beyond a reasonable doubt.  After the subsequent jury trial, the defendant was convicted of three counts of armed home invasion, G. L. c. 265, § 18C; two counts of armed robbery, G. L. c. 265, § 17; use of a firearm during a felony, G. L. c. 265, § 18B; assault and battery by means of a dangerous weapon causing serious bodily injury, G. L. c. 265, § 15A (c) (i); and assault by means of a dangerous weapon.[4]  This appeal followed.

Discussion.  1.  Denial of motion to suppress.  "'In reviewing a ruling on a motion to suppress evidence, we accept the judge's subsidiary findings of fact absent clear error,' and we defer to the judge's determination of the weight and credibility to be given to oral testimony presented at a motion hearing."  Commonwealth v. Hoose, 467 Mass. 395, 399 (2014),

---

[4] The defendant was convicted of assault by means of a dangerous weapon as a lesser included offense on an indictment charging assault and battery by means of a dangerous weapon causing bodily injury, G. L. c. 265, § 15A (b).  A nolle prosequi was entered prior to trial on an indictment charging unlawful possession of a shotgun.

4

quoting Commonwealth v. Contos, 435 Mass. 19, 32 (2001).

"[F]indings drawn partly or wholly from testimonial evidence are accorded deference, and not set aside unless clearly erroneous," Commonwealth v. Tremblay, 480 Mass. 645, 655 (2018), and "[w]e conduct an independent review of the judge's application of constitutional principles to the facts found," Hoose, supra at 399-400.

a. Custody. The motion judge's conclusion that the defendant was not in custody when questioned by police on July 22 was amply supported by testimony of percipient witnesses and by the recording. See Commonwealth v. Groome, 435 Mass. 201, 211-212 (2002) (factors relevant to custody include [1] place of interrogation; [2] whether officers conveyed to defendant any belief or opinion that defendant is suspect; [3] nature of interrogation; and [4] whether, at time statement was made, defendant was free to end interview, as evidenced by whether interview terminated with arrest). The interview was neither aggressive nor intimidating. The defendant had full and private access to medical personnel, and although he was unable to leave, the restraint on his liberty was caused by his medical condition rather than by the police. The defendant was expressly told he could stop the conversation at any time and was neither arrested nor informed he was a suspect. See Commonwealth v. Welch, 487 Mass. 425, 435-437 (2021) (defendant

5

not in custody where he was held at hospital by medical personnel for medical purposes rather than by law enforcement for investigatory purposes, medical staff could come freely in and out of hospital room, and he could have asked officers to leave at any time).  A reasonable person in the defendant's position would not have experienced the environment as coercive, especially where the officers immediately honored his request to stop the interview.  See Commonwealth v. Kirwan, 448 Mass. 304, 312 (2007) (interrogation not custodial where "circumstances did not demonstrate an environment so dominated by the police that a reasonable person would perceive that his liberty was restrained to a degree associated with a formal arrest").[5]

b.  Voluntariness.  Our review of the record further supports that the defendant's Miranda waiver, as well as his statements made to officers on July 22, were voluntary beyond a reasonable doubt.  "A statement is voluntary if it is the expression of a 'rational intellect' in its formulation and a 'free will' in its expression."  Commonwealth v. Lujan, 93 Mass. App. Ct. 95, 100 (2018), quoting Commonwealth v. Miller, 68 Mass. App. Ct. 835, 842 (2007).  In assessing voluntariness, "we

---

[5] Given our conclusion that the defendant was not in custody on July 22, we need not address his remaining Miranda claims. See Commonwealth v. Libby, 472 Mass. 37, 47 (2015), quoting Commonwealth v. Baye, 462 Mass. 246, 253 (2012) ("[t]he requirements of [Miranda] are not triggered unless the interrogation is custodial").

examine whether, in light of the totality of the circumstances surrounding the making of the statement, the will of the defendant was overborne to the extent that the statement was not the result of a free and voluntary act." Commonwealth v. Selby, 420 Mass. 656, 663 (1995).

At the suppression hearing, the officers testified that they did not perceive the defendant to be under the influence at any point on July 22. Although the judge heard expert testimony about the possible effects of the defendant's pain medication, the recording supports that the defendant was awake and alert throughout the interview, expressed no signs of intoxication or extreme pain, and willingly gave detailed narrative responses to the officers' questions. See Commonwealth v. Richards, 485 Mass. 896, 909-910 (2020) (effects of medication did not render statements involuntary where statements were rational and appropriate). Where the evidence supported the officers' testimony, the judge was free to discredit the expert's testimony as inconsistent with the evidence, especially given the expert's admission that he lacked personal knowledge of the degree to which the medication affected the defendant. See Commonwealth v. Tolan, 453 Mass. 634, 644 (2009) (motion judge free to discredit testimony that is unsupported by evidence). Despite the defendant's being hospitalized and treated with pain medication, the recording reflects a defendant who was

7

articulate, aware of his immediate surroundings, and coherent enough to offer exculpatory statements during the interview. See Commonwealth v. Sneed, 440 Mass. 216, 222 (2003) (exculpatory statements supported finding defendant's statements voluntary). We see no error in the judge's conclusion, which was amply supported by the record and consistent with his decision to credit the officers' testimony.

2. July 27 recorded interview. Before the motion judge, the defendant conceded the voluntariness of his recorded statements made on July 27 and challenged the recording only insofar as it constituted fruit of the poisonous tree.[6] At trial, the defendant expressly allowed the jury to hear the unredacted recording in its entirety, declining a limiting instruction and reiterating his lack of objection when the recordings were introduced in evidence.

We are unpersuaded by the defendant's contention that his statements on July 27 were the involuntary product of police coercion. "[T]he issue of voluntariness turns on 'all the surrounding circumstances -- both the characteristics of the accused and the details of the interrogation'" (citation omitted). Commonwealth v. Baye, 462 Mass. 246, 256 (2012).

---

[6] The defendant argues for the first time on appeal that the interview was coercive and that its unredacted admission at trial was error because it contained inadmissible evidence that was highly prejudicial.

8

Viewing the July 27 interview in context, the defendant initiated the contact that led to the interview, received and waived his Miranda rights, and was awake, alert, and admittedly "clear-headed" enough for questioning.  The officers immediately honored his request to stop recording.  See Commonwealth v. Morales, 461 Mass. 765, 777 (2012) (defendant's will not overborne where he willingly responded to questions without hesitation, answered clearly and intelligently, had opportunity to rest between questioning, was afforded his Miranda rights, and there was no evidence of coercive conduct by police).  The tone of the interview was predominantly conversational, and the questions asked by officers were justified by physical evidence, victims' accounts, and the inconsistencies in the defendant's narrative.  See Commonwealth v. Molina, 467 Mass. 65, 76-77 (2014) (statements voluntary despite aggressive tone of interrogation, where officers did not engage in deception and defendant voluntarily came to station and appeared sober, alert, oriented, and lucid throughout interview); Commonwealth v. Johnson, 463 Mass. 95, 105 & n.10 (2012) (police did not improperly imply that they had evidence they did not when they asked if there was "any reason" they might find defendant's fingerprints on evidence).

The judge also did not err in admitting the unredacted recording, which the defendant agreed to.  We review to

9

determine whether there was error, and if so, whether the error created a substantial risk of a miscarriage of justice. See Commonwealth v. AdonSoto, 475 Mass. 497, 504 (2016). The unredacted recording contained opinions and accusations of the interviewing officers, as well as repeated denials by the defendant. While such evidence may not be offered to prove the defendant's guilt, it may be admissible for some other purpose, such as to show voluntariness of the defendant's statements or to call into question the conduct of the police. See Commonwealth v. Cruz, 373 Mass. 676, 692 (1977).

Throughout trial, the defendant's primary theory of defense was that he did not commit the crime, and if he did, it was under duress. The defendant maintained that his statements to officers were involuntarily made, and in his closing argument, he urged the jury to consider his statements in light of his medical condition at the time. The defendant's repeated, recorded denials were consistent with his theory of defense, and his reference to the recording in his closing argument supports that it was admitted as part of a trial strategy. Commonwealth v. Adams, 434 Mass. 805, 813-814 (2001) (fact that challenged evidence was part of trial strategy weighed heavily in determining its prejudicial effect). The opinions and accusations of the interviewing officers "were highly relevant to the issue of voluntariness," an issue raised by the defendant

10

and referenced in his closing argument.  <u>Cruz</u>, 373 Mass. at 692. Where the evidence was not objected to and was used as part of an apparent defense strategy, and where the other evidence of the defendant's guilt was substantial, we see no error in the admission of the challenged recording.

<u>Judgments affirmed</u>.

By the Court (Massing,
  Singh & Hershfang, JJ.[7]),

*Joseph F. Stanton*

Clerk

Entered:  February 8, 2023.

---

[7] The panelists are listed in order of seniority.