NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-218

COMMONWEALTH

vs.

NIK Y. HAMMOND.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant appeals from his convictions, following a jury trial in Lowell District Court, on one count of assault and battery by means of a dangerous weapon, see G. L. c. 265, § 15A (b), two counts of assault and battery on a household member, see G. L. c. 265, § 13M (a), one count of threat to commit a crime, see G. L. c. 275, § 2, and one count of strangulation, see G. L. c. 265, § 15D (b).  The defendant argues that reversal of his convictions is warranted because the Commonwealth gave an improper opening statement, elicited inadmissible evidence of prior bad acts, elicited inadmissible testimony about the victim's pregnancy, elicited inadmissible prior consistent statements, and the court lacked jurisdiction to adjudicate certain crimes committed in another State.  Only the last contention has merit.  We agree that, as the

Commonwealth concedes, two crimes of which the defendant was convicted -- one count of assault and battery by means of a dangerous weapon (count 1) and one count of assault and battery on a household member (count 2) -- were based on conduct that occurred in Rhode Island, over which our courts lack jurisdiction. The judgments on counts 1 and 2 are therefore reversed and those counts shall be dismissed. The convictions on the remaining counts (counts 3, 4, and 5) are affirmed. We address each of the defendant's contentions below.

I. Background. a. Facts. In reviewing the defendant's convictions, we must view the facts in the light most favorable to the Commonwealth. See Commonwealth v. Vargas, 475 Mass. 338, 340 (2016). The victim testified at trial. The following facts are taken from her testimony.

The victim began dating the defendant in 2018. In October 2018, the victim learned that she was pregnant. She told the defendant, and he assured her that they would "figure it out." He asked that she refrain from telling anyone else. She decided to tell her parents, believing them an exception to the defendant's request. The defendant disagreed. Upon learning that the victim had told her parents about the pregnancy, the defendant "got mad" and told the victim that she "was definitely getting an abortion because he told [her] not to tell anybody." She responded that she did not want an abortion, and he told her

2

that was "too bad" and that she "was getting one or he was going to make sure [she] didn't have the baby." He explained that if she "had the baby then he was going to rape and kill the baby" and that he "was going to push [her] down the stairs" and "kick her stomach so [she] wouldn't have the baby." She decided that an abortion would be "best."

The relationship continued and, on January 2, 2019, the two drove to a Burger King restaurant in Rhode Island. In the parking lot, the defendant became angry without warning. He grabbed the victim by the hair and "hit [her] head" against the gear shift. She began speaking, but he told her to "shut up." She continued speaking, and he told her that if she did not stop, he would "punch [her] in the face." She continued speaking, and he punched her in the face.

On July 4, 2019, a male colleague of the victim called her while she was in bed with the defendant. The defendant was familiar with the male colleague, as they had initially been friends, but the two were not on good terms because the colleague had recently learned that the defendant was abusing the victim. Concerned that answering the call might "cause[] a lot of drama," the victim did not answer the call. But the defendant noticed this and began screaming at the victim, demanding that she call the male colleague back. She did so, and the defendant began yelling at the colleague, telling him to

3

stay away from the victim and to stop calling her.  He then hung up the phone and began choking the victim.

On August 15, 2019, the victim was in bed while finishing up laundry and watching television.  The defendant came home, and the victim noticed that he was in a bad mood.  She tried to find out what was wrong, and the defendant became mad, pulled her hair, and again choked her.  She pushed him off, and the two began yelling at each other, after which the defendant left the apartment.  A few days later, the victim ended the relationship.

b.  Proceedings below.  1.  The letter.  The following month, while the victim was at work, her manager told her that the defendant had dropped off a letter for her.  Prior to trial, the Commonwealth moved to introduce the letter, arguing that the victim was familiar with the defendant's handwriting and could authenticate the letter as written by him.  The defendant argued that the letter was inadmissible hearsay and could not be properly authenticated.  The trial judge allowed a voir dire of the victim, who testified that she recognized the handwriting as the defendant's and that the contents of the letter made sense in the context of their relationship.  See Commonwealth v. Purdy, 459 Mass. 442, 450 (2011).  The judge allowed the introduction of the letter, subject to the redaction of non-relevant, prejudicial information.  He asked that the parties go through the document and come to an agreement on a set of

4

redactions.  After conferring, the parties disagreed as to the redaction of three parts of the letter, which the defendant argued were more prejudicial than probative.  The judge overruled the defendant's objections as to all three parts.

The Commonwealth then began its opening statement by reading the first three sentences of the defendant's letter.[1] The defendant objected, arguing that the Commonwealth's discussion of the letter was prejudicial and tainted the jury. The judge responded that the prosecutor had "made a promise.  I don't know if he's going to get that letter in, and we may have to deal with the consequences of saying that he has a letter that may not come into evidence in this case.  So I note your objection for the record, but I am going to overrule the objection."

On the second day of trial, during the direct examination of the victim, the prosecutor sought to admit the letter in evidence.  The defendant objected, arguing (1) that there was a

---

[1] The prosecutor began his opening statement with the following remarks.  "Dear [victim's name], first and foremost, I just want to deeply and -- deeply sincerely apologize for my actions and attitude toward you.  I have never written a letter like this, so I'm sorry if this sucks.  For the past two years, I have done nothing but hurt you, break you and traumatize you."  The prosecutor went on the explain that "[t]hose words [we]re the words of the defendant in a letter addressed to [the victim]." We note that the portion of the letter read aloud by the prosecutor was not one of the portions that the defendant sought to redact during the motion in limine hearing.

lack of foundation establishing the defendant as the author of the letter, and (2) that the letter was hearsay. The trial judge stated that the foundation argument went to "weight not [] admissibility" but sustained the defendant's hearsay objection. The Commonwealth argued, unsuccessfully, that having already cleared the initial hurdle of authentication, the letter was admissible as a statement by a party opponent and was relevant because it showed the defendant's consciousness of guilt. The judge concluded that the substance of the defendant's letter did not clearly demonstrate consciousness of guilt and did not necessarily amount to a statement against interest, penal or otherwise, and that it was therefore hearsay. On that basis, he excluded the letter.

2. The restraining order. At trial, there were three instances where testimony was given regarding a restraining order issued against the defendant. Two instances occurred during the victim's testimony. The victim mentioned the restraining order when discussing her decision to report the abuse to the police and when discussing the letter that the defendant had written to her. In both instances the defendant objected, and the court struck the testimony and instructed the jury to disregard the mention of the restraining order.

The third mention of the restraining order occurred during the direct examination of the officer responsible for

6

investigating the defendant.  The officer appeared to misremember the charges against the defendant and incorrectly stated that the defendant had been charged with the violation of a restraining order.  The defendant did not object, nor did he ask for a limiting instruction; instead, after a sidebar, the officer's recollection was refreshed with his police report and he testified accurately about the charges that had been at issue, which did not include a restraining order violation.

3.  Jury questions.  During deliberations, the jury asked two questions.  First, "[w]as there an aspect of the law that prohibited the jury from viewing the letter written by the defendant or any pictures?"  Second, "[wa]s the restraining order applicable evidence to consider? (or separation order)."  The parties agreed that the judge should reiterate the instruction he had given at the close of evidence; the judge accordingly repeated to the jury that "the evidence that was presented to [the jury] is what is before [the jury] and . . . [the jury are] not to speculate or to guess or to even consider any evidence that was not something that . . . was evidence in this case."

4.  Sentencing.  After the jury's guilty verdicts, the court sentenced the defendant "as follows:  On counts 1, 2, 3 and 5, you will be sentenced to [eighteen] months to the House of Correction, suspended for one year, with special conditions

7

of stay away, no contact, no abuse, abide by the restraining order and attend and complete certified batterers program. With regards to count 4, you'll be sentenced to six months to the House of Correction, suspended for two years, with the special condition that you stay away, have no contact, no abuse, and abide by the 209A order."

II. Discussion. a. Opening statement. The defendant's first argument is that the Commonwealth's opening statement was improper, as it recounted the inculpatory contents of a letter that was not admitted in evidence. Because the defendant objected to the opening statement, we review for prejudicial error. Commonwealth v. Deloney, 59 Mass. App. Ct. 47, 50 (2003).

As the defendant sets out in his brief, a prosecutor is "entitled to state in [their] opening whatever [they] reasonably and in good faith expected to prove by evidence." Commonwealth v. Errington, 390 Mass. 875, 883 (1984). That the evidence may not, in the end, be admitted, does not alone render the opening statement improper. See Commonwealth v. Qualls, 440 Mass. 576, 586 (2003) ("Absent a showing of bad faith or prejudice, which has not been made, the fact that certain evidence fails to materialize is not a ground for reversal").

Here, in light of the judge's ruling on the motion in limine that sought to introduce the letter, the prosecutor

8

objectively had a good faith basis to believe that the letter would be admitted.  Therefore, the defendant could not show bad faith on the part of the prosecutor.  We likewise think the defendant could not show prejudice.  Of course, the letter itself was prejudicial, and the jury were sufficiently aware of its existence, given that they asked a question about why they had not been permitted to see it.  But that is immaterial where the judge's ruling excluding the letter was in error.  "A defendant's own statements are admissible as statements of a party opponent."  Commonwealth v. AdonSoto, 475 Mass. 497, 502 (2016), citing Mass. G. Evid. § 801(d)(2)(A) (2016).  The letter -- written by the defendant and offered in evidence by the Commonwealth -- was not, as the judge concluded, inadmissible hearsay.[2]  Because the letter was erroneously excluded, the description of it in the prosecutor's opening statement was not prejudicial.

The defendant also argues that the judge failed, following the letter's exclusion, to provide an adequate curative instruction to the Commonwealth's opening statement.  The defendant, however, did not request an instruction or take any other action in response to the opening argument once the judge

---

[2] The trial judge did express concern about ambiguity in the letter, but his ruling was not based on a conclusion that the risk of unfair prejudice outweighed the letter's probative value.

9

ruled that the letter quoted therein was not admissible.  The defendant has not demonstrated that the opening statement created a substantial risk of a miscarriage of justice.  To begin with, as we have described above, there was no prejudicial error in the opening statement because the exclusion of the letter was in error.  Even putting that aside, the judge properly instructed the jury in response to their questions about the letter, reminding them to disregard anything not in evidence.  See Commonwealth v. Andrade, 468 Mass. 543, 549 (2014) ("The jury are presumed to follow the judge's instructions").

b.  Prior bad acts.  1.  Restraining order.  The defendant's next argument is that the judge "erred by allowing prior bad acts into evidence."  The defendant points to testimony by both the officer and the victim stating that the defendant had been charged with violation of a restraining order, arguing that this evidence was impermissibly admitted for purposes of demonstrating bad character or propensity to engage in wrongdoing.  See Commonwealth v. Bryant, 482 Mass. 731, 734 (2019).

With respect to the officer's testimony, there was no objection to this testimony or request for a limiting instruction, and the officer corrected himself later in his testimony after his recollection was refreshed by looking at his

10

police report.  His corrected testimony thus was not that the defendant had been arrested for violating a restraining order, and we do not think a reasonable juror would have understood this as evidence that a restraining order was taken out against the defendant.  In any event, even if it were such evidence, the defendant has not demonstrated in light of the officer's correction, that it created a substantial risk of a miscarriage of justice.  Commonwealth v. Davis, 487 Mass. 448, 467 (2021) (unpreserved claim of error reviewed for substantial risk of miscarriage of justice).

With respect to the victim's testimony about the restraining order, it was struck by the judge.  The defendant, however, asserts that the jury were "concerned about" the restraining order, because they asked whether it was "applicable evidence to consider."  In response to the jury's question, the defendant "concur[red]" with the Commonwealth's suggestion that the judge repeat the instruction that the jury should not speculate as to matters not in evidence.  To the extent the defendant is concerned about the adequacy of that instruction, he has not shown that any weakness in it created a substantial risk of a miscarriage of justice.

2.  The victim's pregnancy.  The defendant next argues that the prosecutor improperly elicited the victim's testimony regarding her pregnancy and the defendant's response to learning

11

that the victim had revealed the pregnancy to her parents. Calling this evidence of uncharged conduct, the defendant argues that the probative value of the testimony regarding the victim's abortion was substantially outweighed by its prejudicial effect. See Commonwealth v. Dunn, 407 Mass. 798, 807 (1990).

The defendant asserts that the claim of error is preserved because he objected at trial, but his objection was only that the victim was speculating that the defendant was threatening physical violence when he stated that he was "going to make sure [she] didn't have the baby." The defendant's new claim on appeal -- that the risk of unfair prejudice from the evidence that he bullied her into having an abortion she did not want substantially outweighed its probative value -- was not preserved. We therefore "review any error the judge made in admitting the evidence at issue for a substantial risk of a miscarriage of justice." Commonwealth v. Bonds, 445 Mass. 821, 828-829 (2006).

There was no error. As the judge instructed, in order to prove that the defendant threatened to commit a crime, the Commonwealth needed to prove "[f]irst, that the defendant expressed an intent to injure a person or property of another, now or in the future; second, that the defendant intended that his threat be conveyed to a particular person; third, that the injury that was threatened, if carried out, would constitute a

12

crime; and, fourth, that the defendant made the threat under circumstances which could reasonably have caused the person to whom it was conveyed to fear that the defendant had both the intention and the ability to carry out the threat."  The threats against the victim if she did not get an abortion are the very basis for the threat charge.  The Commonwealth proved that after the defendant learned that the victim was pregnant and refused to have an abortion, he told the victim that he would violently attack her and cause her to have a miscarriage and that if she had the baby he would rape and kill the baby.  The victim's subsequent decision to have an abortion despite her initial decision not to do so tended to show that the "threat by its content in the circumstances" would have caused a person "to fear that the threatened crime or injury might be inflicted" (citation omitted).  Commonwealth v. Leonardo L., 100 Mass. App. Ct. 109, 114 (2021).  The admission of the victim's testimony in this respect was necessary to prove the Commonwealth's case. Indeed, in large measure it was not evidence of uncharged conduct at all, but of the very crime with which he was charged. Had it been objected to on the grounds the defendant now raises, there would have been no abuse of discretion in concluding its probative value was not substantially outweighed by the risk of unfair prejudice.

13

c.  Prior consistent statements.  The defendant's next argument is that the prosecutor improperly elicited the victim's prior consistent statements.  The defendant points to four instances where the prosecutor asked, first, whether the victim had reported the incident when it happened, to which she responded that she had not due to a fear of retaliation from the defendant, and second, whether she had reported the incident to the police on a future date, to which she responded that she had.  Of the four instances, the defendant objected to the last but failed to object to the first three.

"Generally, a witness's prior consistent statement is inadmissible."  Commonwealth v. Fryar, 425 Mass. 237, 252 (1997).  But "a witness's prior consistent statement is admissible where a claim is made that the witness's in-court statement is of recent contrivance."  Commonwealth v. Zukoski, 370 Mass. 23, 26 (1976).[3]

---

[3] There is no merit to the Commonwealth's suggestion that no prior consistent statement was elicited, as the victim only testified as to the act of reporting and did not testify as to the contents of her conversations with the police.  The Supreme Judicial Court has held that "[s]uch testimony 'is the equivalent of saying that [the complainant] repeated her account of the incident.'"  Commonwealth v. Aviles, 461 Mass. 60, 68 (2011), quoting Commonwealth v. Stuckich, 450 Mass. 449, 457 (2008).  The victim's testimony that she had reported these incidents to the police thus must be treated as the equivalent of her repeating her account of the incident.

14

At the time the prior consistent statements were elicited, during the direct examination of the victim, the defense had not questioned her credibility or the delay in her reporting. However, there was "no prejudice to the defendant because the evidence would have been admissible on redirect examination." Commonwealth v. Aviles, 461 Mass. 60, 70 (2011). On cross-examination, defense counsel asked three separate times whether anyone had called the police when the abuse occurred. Defense counsel elicited that, at the time of the abuse, the victim had lied to her mother about the cause of the bruises and markings left by the defendant's beatings. The defendant's cross-examination highlighted the victim's prior inconsistent statements and her failure to report the abuse at the time it allegedly occurred, suggesting that the victim's in-court account of the abuse was contrived after the relationship had ended. This would have opened the door on redirect examination for the introduction of the victim's prior consistent statements.

d. Lack of jurisdiction. The defendant's final argument is that the court lacked jurisdiction to adjudicate the count of assault and battery by means of a dangerous weapon (count 1) and both counts of assault and battery on a family or household member (counts 2 and 3). The Commonwealth concedes that the two counts stemming from the defendant's conduct on January 2, 2019

15

-- assault and battery by means of a dangerous weapon (count 1) and one count of assault and battery on a family or household member (count 2) -- occurred in Rhode Island, and the trial court therefore lacked jurisdiction over these counts. We agree. With respect to count 3, the assault and battery against a family or household member occurring on August 15, 2019, the victim testified that it took place in the defendant's apartment in Massachusetts. Consequently, that count was within the trial court's jurisdiction.

III. Conclusion. On counts 1 and 2, the judgments are reversed, the verdicts are set aside, and those counts shall be

dismissed.  The remaining judgments of conviction on counts 3, 4, and 5 are affirmed.[4]

So ordered.

By the Court (Green, C.J.,
  Rubin & Hand, JJ.[5]),

*Joseph F. Stanton*

Clerk

Entered:  September 8, 2023.

---

[4] Although the defendant does not argue that in the case of reversal of only some of the convictions he is entitled to resentencing, nothing prevents him from bringing a motion seeking such resentencing if he believes he is entitled to it. See Commonwealth v. Tinsley, 487 Mass. 380, 390-391 (2021) (resentencing may be appropriate where sentences are interdependent and part of integrated package and only some are affirmed).  See also id. at 381 ("Under double jeopardy principles, a new sentence may be imposed only on those convictions for which the sentence has not been fully served at the time of resentencing").  We express no opinion on that question.

[5] The panelists are listed in order of seniority.